AMERICAN NATIONAL BANK v. JUNK BROS.

(*Nashville.* May 3, 1895.)

1. BILLS AND NOTES. *Liability of indorser upon note made for his accommodation.*

Where a note is made for the indorser's accommodation, it is his duty to provide funds to meet it at maturity, and he is, therefore, bound to the holder without presentment, protest, or notice. (*Post, p. 625.*)

Case cited and approved: Black v. Fizer, 10 Heis., 48.

2. SAME. *Notice of protest to insolvent corporation.*

Notice of protest for nonpayment of negotiable paper is sufficient, though not actually received by the company, where the indorser is an insolvent corporation that had made a general assignment for the benefit of its creditors, and abandoned its business, and the notice, addressed to the corporation, was duly received, opened, and filed by a clerk, the assignee at the former office of the company, where its affairs were being wound up. (*Post, pp. 625–631.*)

Cases cited and approved: Harris v. Memphis Bank, 4 Hum., 518; 4 Howard, 336; 63 Maine, 340; 3 Wend., 408; 51 N. Y., 148; 142 Mass., 290; L. R., Ch. Div., 795; 79 Maine, 376.

3. SAME. *Same.*

Notice to the indorser's assignee of protest of negotiable paper for nonpayment is sufficient where the indorser has made a general assignment for the benefit of his creditors. (*Post, pp. 631–634.*)

Case cited and approved: 79 Maine, 376.

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. ANDREW ALLISON, Ch.

J. M. GAUT and J. S. PILCHER for Bank.

A. N. GRISHAM for Junk Bros.

BEARD, J.   This suit was instituted against the Junk Bros. Lumber & Manufacturing Co., a corporation with its situs in Nashville, as the indorser for value of certain domestic negotiable notes.   The defendant resisted recovery on the ground that notice of dishonor. of the paper was not given as the law requires.   A decreé having been pronounced against the corporation, it has filed the record in this Court, and the action of the Court below in overruling this defense is assigned as error.

Before coming to the general question raised by the assignments, it is proper to dispose of five of these notes, which are shown by the proof to have been made for the accommodation of this corporation and afterwards indorsed by it to the complainant.   As to these notes, their makers stood in the situation of sureties to the indorser, and it was the latter's duty to provide funds to meet them at maturity, and it was, therefore, bound to the holder without presentment, protest, or notice.   2 Am. & Eng. Ency. of Law, 399; 2 Daniel on Nego. Ins., Sec. 1085; 3 Randolph on Com. Paper, Sec. 1205; *Black* v. *Fizer*, 10 Heis., 48.   Thus disposing of those five notes, the question recurs as to the liability of the defendant as indorser of the remaining thirty-five.

The facts disclosed in the record are, that, for a

40—10 P

considerable period of time, the Junk Bros. Lumber
&· Manufacturing Co. were engaged in manufacturing
in Nashville, with its business office located at the
corner of First and Woodland Streets, in that city.
Its books 'were kept there and there its mail, with
that of its principal officers and its various employes,
was delivered.   On May 28, 1892, the corporation
being insolvent, made a general assignment of all
its property, both real and personal, to one Stain-
back, as assignee, for the benefit 'of all its creditors.
This assignment was a full surrender to the assignee,
and, by its terms, "vested · him with all power and
authority to do all acts and things which may be
necessary in the premises to the full extent of the
trust" created, and it authorized him "to ask, de-
mand, recover and receive of and from all and every
person or persons, all property, debts, and demands
due, owing, and belonging to" said assignee, and
"to give acquittances and discharges for the same,
to execute and deliver deeds," and to use the name
of the assignor whenever the purpose of the trust
required.

Immediately on the execution of the assignment,
the assignee took charge of the property covered
by it, and went into possession of the office of the
corporation, with its books, iron safe, etc., and em-
ployed at this office a young man to do such cler-
ical work as was required in the administration of
the trust.   For a limited time after the day of the
appointment, · with the old employes of the corpora-

tion, he continued to run its machinery for the purpose of converting its raw material into manufactured goods. In winding up the affairs of this trust, he took into his service, as such assignee, one Spain, who was a stockholder as well as the director and general manager of this corporation at the date of the assignment, and who continued, according to the testimony in the case, to sustain these relations to it after that date. It is true the duties imposed by the assignee upon Spain made it necessary for him to be principally in the yard and about the plant, but the proof is, that he was in this office every day, and sometimes more than once during the day. The mail of the corporation was delivered there as before, and, assuming to be entitled to the control of it, the assignee opened it personally or by his clerk, and gave it such attention as it required, and no officer of the corporation ever called in question his right to control it, although, in the nature of things, all the officers must have known that he was receiving it and so dealing with it.

After the assignment the corporation abandoned business, and all of its executive officers (with the single exception of the general manager) were scattered, and each one pursued his own private affairs at other points in the city of Nashville. After that time it had no other office, and there were but two meetings of the board of directors, and these were held in private offices, and with regard to past and

unimportant transactions.   Beginning with the date
of the assignment, and for several months thereafter,
the paper sued on matured, and payment on proper
demand · having been refused, it was protested by a
Notary Public, and notice of the protest in each
instance, save two, was directed by him to the cor-
poration by name, and was left by him at the office
heretofore mentioned.   In the two excepted cases, or
instances, the notices were addressed to "George W.
Stainback, Assignee of the Junk Bros. Lumber &
Manufacturing Company."   In all these cases, as
notices were received, the clerk of the assignee
entered a memorandum of the protest in the books
of the corporation kept by him, and generally de-
posited · these notices in the safe.   The officers of
the corporation insist that they did not receive these
notices.   Conceding this to be true, is the defend-
ant bound as indorser under the foregoing facts,
notwithstanding the lack of actual receipt of these
notices?

Where the indorser has failed to receive notice,
he is discharged unless the holder can show that he
has used due diligence in his effort to communicate
notice.   Where this can be shown, however, it is
immaterial. that the notice does not reach the in-
dorser.   *Harris* v.  *Robinson*,  4  Howard  (U.  S.),
336.   So it is, that legal notice is not necessarily
actual notice.   *Saco National Bank* v. *Sanborn*, 63
Maine, 340.   Thus, an indorser who changes his
residence without the knowledge of the holder of

the protested paper, is bound by notice sent to his former place of residence, if the holder is not guilty of negligence in his failure to have knowledge of the change. In such a case the holder, in the absence of any fact to put, him on inquiry, can well assume that the indorser's residence continues where it formerly was. He is not bound to go upon the street to ascertain a fact which he has the right to assume he already knows. *Saco National Bank* v. *Sanborn, supra; Bank of Utica* v. *Phillips,* 3 Wend., 408; *Requa* v. *Collins,* 51 N. Y., 148; 2 Daniel on Neg. Insts., Sec. 1083; 3 Randolph on Com. Paper, Sec. 1281; *Harris* v. *Memphis Bank,* 4 Hum., 518.

The well-established rule is that, where personal notice is not given, the notice must be sent to the place where the indorser will be most likely to receive it, and, if there is reasonable diligence exercised by the holder in ascertaining this place, this is all the law demands.

*The Bank of America* v. *Shaw,* 142 Mass., 290 (S. C., 7 N. E. R., 779), is, in many respects, similar to this case, and will serve to illustrate this rule. The facts in that case were that F. Shaw & Co. had done business at 268 Purchase Street, in Boston, and, while so engaged, indorsed the paper in question. Before its maturity, the firm became insolvent, and made a general assignment to one Wyman for the benefit of their creditors. The assignee took possession of the office of the firm, and

used it in the administration of his trust, but he permitted the sign of the firm to remain tacked to the door. At the maturity of the paper, F. Shaw was a fugitive from Massachusetts, and in hiding in Canada. The notice of protest addressed by the Notary to the firm, by its proper name, was left by him at this office. F. Shaw, when subsequently sued on this paper, defended upon the ground that this notice was not sufficient to bind him, but the Court held that it was good, "because it was sent to what had been the place of business of the firm, where its affairs were actually in process of settlement under the trust." It is true that, in the opinion announced, the fact of Shaw being a fugitive at the time of the notice is given its due weight by the Court, but this was not, by any means, controlling in the conclusion reached.

So, in *ex parte Baker*, L. R., 4 Ch. Div., 795, the facts were, that Bellman & Co., who had done business at "Oak Brewery," but were no longer doing so, drew drafts on one Hay, which were dishonored. Before their maturity, Bellman had become bankrupt, and a trustee had been appointed for his estate. Notice of dishonor was directed to the drawers at "Oak Brewery," and, yet, in the absence of proof that the trustee was in possession of the old place of business of the firm, the notice was held to be sufficient.

Again, in *Casco National Bank* v. *Shaw,* 79 Maine, 376 (S. C., 10 At. Rep., 67), upon facts

like those considered in *Bank* v. *Shaw*, *supra*, and in an action against the indorsers, the Court say: "Notices were addressed to them at their former place of business, where their affairs were being settled by a trustee to whom they had made an assignment for the benefit of their creditors, and we have no doubt that the notices were received by the latter. Notices so sent and mailed are sufficient."

It is unnecessary to extend the discussion of this question. It is sufficient to say that, in view of all the facts of this case, as well as in the light of these authorities, we have no hesitation in holding that the corporation is liable as indorser on all this paper, where notices of protest were addressed to it in its corporate name.

But it is insisted, however, that at least the corporation is not liable on the two notes the notices of the protest of which were addressed by the Notary to "G. W. Stainback, assignee of the Junk Bros. Lumber & Manufacturing Company." Whether notice of protest to the trustee of a bankrupt's estate, or to the assignee of an insolvent assignor making a general assignment, is sufficient, has been the subject of uncertainty of opinion with some of the text writers, and of conflict among others.

Mr. Byles, in his work on Bills (Wood's Ed.), p. 294, says: "If the drawer of a bill become bankrupt, notice must, nevertheless, be given to him, whether a trustee be appointed or not." A number of English cases are cited by the author in his note

to this text, some of which support it, and others do not.

Parsons says: "If a person entitled to notice be bankrupt, notice should be given to him, if the assignees are not yet appointed; if they are, notice, perhaps, should be given to them," etc.   1 Parsons on Notes and Bills, 500.

Judge Story says: "If the party entitled to notice be a bankrupt, and assignees have been appointed, and the holder knows it, notice should be given to them."   Story on Prom. Notes, Sec. 307.

Mr. Daniel says: "If the party be a bankrupt, it is best to give notice to him and to his assignee also."   If, however, "given to the assignee alone, it would probably be sufficient."   2 Daniel, § 1002.

On the other hand, Mr. Chitty says: "If the party entitled to notice be a bankrupt, notice should be given to him before the choice of assignees, and, after such choice, to them."   Chitty on Bills, p. 228.

The author of the article on Bills and Notes (Mr. Charles Merrill Hough, of the New York bar) in 2 Am. & Eng. Enc. of Law, p. 412, says: "Upon the bankruptcy of an indorser, and before the appointment of an assignee, the bankrupt himself is the proper person to notify, but the assignee, when appointed, should receive all notices of dishonor."

Mr. Tiedeman says: "If the drawer or indorser be bankrupt, notice should be given to the assignee, if there be one, particularly if the party has absconded."

In one of the latest, and, perhaps, the most elaborate, of the treatises on the subject of commercial paper — that of Mr. Randolph — the author says: "After the drawer or indorser of a bill has become bankrupt, notice of its dishonor must be given to him or to his assignee; . . &ast; &ast; &ast; if an assignee has been appointed, and his appointment is known, the notice should be given to him." 3 Randolph, Sec. 1243.

Mr. Wade, in his work on "Notice," says: " When the indorser or drawer becomes bankrupt subsequent to drawing or indorsing the bill or note, the notice should be given to the assignee, when one has been selected prior to the dishonor of the instrument."

This question seems to have been considered and determined in only three of the American Courts. The Supreme Court of Kentucky, in *Callahan* v. *Bank*, *supra*, in the case of a voluntary general assignment for the benefit of creditors, after a full and careful consideration of the authorities, announced as the law , of that State, that notice to the assignee, in such an assignment, would bind the indorser and his estate, and this upon the ground that, by this act of the assignor, he was, under the assignor, in a qualified sense' at least, the general representative of his indebtedness.

On the other hand, the Supreme Court of Ohio, in *House* v. *Vinton*, 43 Ohio St. R., 346, by a majority opinion, declined to recognize the authority

of this case, making a distinction between an assignee under a voluntary general assignment and an assignee in bankruptcy. In this latter case, however, there is a strong dissenting opinion by two of the Judges of that Court, in which the soundness of the rule, as announced by the Kentucky Court, is earnestly insisted upon.

The. case of *Casco National Bank* v. *Shaw*, 79 Maine, 376, is in ·harmony with the rule in *Callahan* v. *Bank*, *supra*, although the latter case is not mentioned in the opinion of the Court.

This question has been heretofore undetermined in this State, and we are at liberty, therefore, to establish that rule which is most in accord with what we conceive to be the weight of authority and reason. We are satisfied, therefore, to hold the law to be that, whenever a general assignment is made, as contemplated by our ˙ law, that the assignee in such assignment so far stands in the shoes of his assignor that notice to such assignee of the nonpayment of indorsed paper will bind such indorser.

.The judgment of the Court below is affirmed.