## First National Bank of Louisville v. Bickel, et al.

## First National Bank of Louisville v. Bickel, et al.

(Decided May 22, 1913.)

### Appeals from Jefferson Circuit Court
### (Common Pleas Branch, First Division).

1. Practice—Right of Court to Set Aside Consent Orders and Judgments.—When the ends of justice require it, the court in which an order or judgment is entered, although it be by consent, may set it aside upon the motion of either of the parties if the motion is made while the court has control of the order or judgment, but before the court sets aside a consent order or judgment the party asking that it be done should present good and sufficient reasons therefor.

2. Practice—Civil Code—Section 333—Construction of—Waiver.—Section 333 of the civil code providing in substance that objections and exceptions must be made and taken by a complaining party before he will be heard afterwards to object to an order or ruling of the court, do not apply with the same binding force in the court in which the ruling or order is made as they do in this court. The court in which the order or judgment is made may

for good reasons set it aside, although it is entered by consent or without objection; but a party who brings his case to this court cannot avail himself here of erroneous rulings or orders made in the lower court unless he has, in the manner pointed out in section 333, saved an exception or an objection to the order or ruling he complains of.

3.  Bills and Notes—Endorsers.—A person who places his name upon commercial paper other than as maker, drawer or acceptor is deemed to be an endorser, unless he indicates by proper words in the endorsement his intention to be bound in some other capacity.

4.  Banks—Vice-President Not Responsible If Notice of Dishonor of Paper is Not Given.—The vice-president of a bank by virtue of his office is not charged with the duty of seeing that notice of the dishonor of paper is given to the person entitled thereto, or liable in any manner if he fails to do so.

5.  Banks—When Bank Officer Estopped to Deny Liability on Paper Because Notice of its Dishonor Not Given.—Where an officer of a bank is one of the signers of commercial paper executed to the bank, he is entitled to notice of the dishonor of the paper to the same extent as if he was not connected with the bank, unless it was his duty as an officer of the bank to give such notice; and if it was, he will be estopped to plead want of notice as a defense to a suit by the bank against him.

BRUCE & BULLITT and HELM BRUCE for appellant.

B. F. WASHER, W. PRATT DALE, C. H. SHEILD and KOHN, BINGHAM; SLOSS & SPINDLE for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

These two appeals presenting the same questions of law will be disposed of in one opinion.

On April 12, 1907, the White City Co., by its president, executed and delivered to the First National Bank a demand note for $5,000, which was endorsed by the appellees. On May 29, 1907, the same parties, with a few exceptions, signing the paper in the same manner, executed to the bank a note for $5,000 due in sixty days, and on June 21, 1907, the same parties, with a few exceptions signing the paper in the same way, executed a note to the bank for $10,000 due in forty days.

In November, 1908, the bank brought three separate suits on these notes, and it appears that substantially the same motions, demurrers and answers were presented by the defendants in each case. No evidence was taken in either case, and in April, 1909, a general demurrer was sustained to the petition filed on the note

that was executed on May 29, 1907, and the petition dismissed. From the judgment dismissing the petition the bank prosecuted an appeal to this court, and in May, 1911, the judgment of the lower court was affirmed by this court in an opinion that may be found in 143 Ky., 754. On October 7, 1911, the mandate from this court was filed in the lower court and upon the filing of this mandate there was entered in each of the other two cases which had remained on the docket in the same condition as they were when the judgment dismissing the petition was rendered in the case appealed to this court this order:

"The issues involved in this action having been heretofore determined against the plaintiff in action No. 52914, First National Bank v. C. C. Bickel, this cause is now dismissed. It is therefore considered by the court that the defendant recover of the plaintiff his costs herein expended and may have execution therefor."

At this point we may digress a moment to say that it is evident that the two actions in which this order of dismissal was made were left pending on the docket for the purpose of entering such a judgment in these cases as might be authorized by the opinion of this court in the appealed case, and so when the mandate in the appealed case was issued affirming the judgment of the lower court, the order of dismissal in the two cases now before us was entered.

It appears, however, that after this order of dismissal was entered, counsel other than those who then represented the bank were employed, and in December, 1911, and within sixty days from the order of dismissal, the new counsel for the bank entered a motion in behalf of the bank to set aside the orders of dismissal, in each case and at the same time tendered an amended petition. But the lower court refused to set aside the orders of dismissal or to allow the amended petitions to be filed, and from the ruling of the court these appeals are prosecuted.

Quite a good deal is said in argument by counsel for both parties as to the effect of the orders of dismissal entered on October 7, 1911, counsel for the bank insisting that the bank was not estopped from asking that these orders be set aside, while counsel for Bickel and others contend that these orders were in effect agreed orders and therefore the bank was estopped from asking that they be set aside. Looking at these orders

as they stand without reference to any custom or practice prevailing in the Jefferson Circuit Court, it would appear that these orders were made by consent or agreement of counsel representing both parties as no objection was taken or exception saved. But if we should treat them as consent orders, we do not think they operated to conclusively estop the bank from asking that they be set aside while the court had control over them, as the Jefferson Circuit Court did at the time the motion to set aside was made, or that the court entering these orders was without power, upon a proper showing to set them aside within the time mentioned.

Ordinarily a party who agrees or consents to the entry of an order or judgment will not afterwards be heard to complain of it or allowed to have it set aside. But this rule of practice is not without exceptions. When the ends of justice require it, the court in which an order or judgment is entered, although it be by consent or agreement, may set it aside upon the motion of either of the parties if the motion is made while the court has control of the order or judgment. In other words, a consent order or judgment is not conclusively binding, and does not work an absolute estoppel on the party consenting to it. But before the court will set aside a consent order or judgment, the party asking that it be done should present good and sufficient reasons therefor, and if it appears that injustice or wrong would result from a failure to set aside the order, and further appears that substantial rights of the adverse party arising since the consent order was entered and as a result of it, will not be prejudiced by setting aside the order, the court should grant the request.

Section 333 of the civil code, providing in substance that objections and exceptions must be made and taken by a complaining party before he will be heard to afterwards object to an order or ruling of the court, do not apply with the same binding force in the court in which the ruling or order is made as they do in this court. As we have stated, the court in which the order or judgment is made and entered may for good reasons set it aside upon motion made within proper time, although the order sought to be set aside was entered by consent or without exception or objection by either party. But a party who brings his case to this court cannot avail himself here of erroneous rulings or orders made in the lower court unless he has, in the manner pointed out in

section 333, saved an exception, or an objection and ex-ception, as the case may be, to the order or ruling he complains of. A party will be conclusively presumed on appeal to have consented to such rulings and orders as he did not except or object to, and therefore will not be heard to complain of them for the first time in this court.

The reason for this rule of practice is obvious and has often been referred to in the opinions of this court. If a party in the circuit court could, by failing to make objections or save exceptions, thus lull his adversary into security, and also deprive the trial court of an opportunity to correct errors to which its attention was called, and avail himself of the objection for the first time in this court, he would be permitted to place his adversary at a great disadvantage as well as materially obstruct the speedy disposal of cases.

For this, as well as other reasons that we might suggest, the uniform practice is not to allow a party to make for the first time in this court an objection that should have been made in the trial court. As illustrative cases on this subject we refer to Branson v. Commonwealth, 92 Ky., 330; Louisville & Nashville R. R. Co. v. Graves, 78 Ky., 74; Loving v. Warren County, 14 Bush, 316; Buckles v. Commonwealth, 113 Ky., 795. But in the cases before us we think the court properly refused to set aside the orders of dismissal because the reasons for asking that it be done, which appear in a resolution adopted by the directors of the White City Co., and an amended pleading tendered with the motion to set aside the order, did not make any substantial change in the issues as presented in the 143 Ky., case.

For the purpose of showing this, we will now consider more in detail the things that it is said distinguish these cases from the 143 Ky. case. It is first insisted that a resolution adopted by the board of directors of the White City Co., on the faith of which the three notes were executed to the bank, was not relied on or made a part of the record in the 143 Ky. case, and the argument is made that this resolution estops the appellees from making the defense that they were only endorsers of the paper and not sureties. The resolution reads: "Be it resolved by the board of directors of the White City Co. that the president of the White City Co. be authorized to borrow $15,000, and that the board of directors of the White City Co. sign the note for security of

the money and pledge the first receipts of the White City Co. to liquidate this deal.''

The pertinent part of each of the notes executed to the bank, reads as follows: ''We promise to pay to the order of First National Bank, Louisville, Ky., $....... value received, negotiable and payable at the office of First National Bank of Louisville, Ky., and hereby pledge as security therefor, and as security for any other debt or liability we may now or hereafter owe or be under to said bank the receipts of the White City Co., as per resolution herewith attached.''

In the 143 Ky. case the bank charged in its petition that the appellees signed the notes as sureties and not as endorsers, and therefore were not entitled to notice of the dishonor of the paper; and it was further contended that the fact that they did sign as sureties might be shown by parol evidence. But in rejecting this view, we said that under the Negotiable Instrument Act ''A person who places his signature upon an instrument other than as maker, drawer or acceptor is deemed to be an endorser, unless he clearly indicate by proper words in the endorsement his intention to be bound in some other capacity.'' Section 63 is to be read in connection with section 31, which is as follows:

''The endorsement must be written on the instrument or upon a paper attached thereto. The signature of the endorser, without additional words, is a sufficient endorsement.

''The purpose of the statute is to exclude parol evidence and to make the written instrument control the rights of the parties. The statute fixing the legal effect of the instrument, parol evidence may not be received to give it a different effect.''

In short, the ruling of the court in that case was that a person who places his name upon paper other than as maker, drawer or acceptor, is deemed to be an endorser unless he indicates by proper words in the endorsement his intention to be bound in some other capacity, or his intention to be bound in some other capacity than as endorser appears on the paper in connection with and as a part of the endorsement.

It is true the resolution adopted by the board of directors was made a part of the paper executed to the bank, or rather, as appears from the paper, was attached thereto. But neither the resolution nor the note contain any words indicating an intention on the part of the

signers of the papers to be bound in any other capacity than as endorses. If the resolution should be considered in connection with and as a part of the endorsement, it does not show a purpose on the part of the persons who signed the paper to become bound in any other capacity than as endorsers. The resolution simply recites that the board of directors of the White City Co. will "sign the note for security of the money," without in any manner indicating whether they would sign the note as makers, drawers, acceptors, sureties or endorsers, and that the directors will pledge the receipts of the White City Co. to liquidate the notes, and the notes recite that the signers have pledged the receipts of the White City Co. as security for their payment. Reading both of these papers together, they merely provide that the directors will sign the notes as security for the money advanced and pledge for their payment the receipts of the White City Co., and these conditions do not have the effect of showing that when the directors signed the notes as endorsers they intended to become liable as sureties. There are no words either in the resolution or in the notes indicating a purpose on the part of the signers of the notes to become bound otherwise than as endorsers, and so the opinion in 143 Ky. is controlling on the question that the signers of this paper should be treated as endorsers.

It is further argued for the bank that as the appellee Bickel was a director in and president of the White City Co., and vice-president of the bank, and had actual knowledge the day before the notes matured that they would mature on the next day, and that the White City Co. had no funds with which to pay them, it was his duty as an officer of the bank to see to it that notice of the dishonor of the paper was given to the parties entitled to notice, and that his failure to do this estops him from denying his liability on the paper.

We do not know of any authority, and have not been referred to any by counsel for appellant, holding that the vice-president of a bank is, by virtue of his office alone, charged with the duty of seeing that notice of the dishonor of paper is given to the person entitled thereto or liable in any manner if he fails to do so. Of course the vice-president of a bank or the president or any director, or indeed any other officer or employe might be charged by resolution of the bank or by its habit and custom of dealing with the duty of protesting paper

or giving notice of its dishonor, but there is no showing in these cases that Bickel had ever been. authorized by the bank to do these things or that there was any custom of the bank under which he did or should do them; and the vice-president of a bank, simply because he is vice-president, is under no duty to attend to these matters and is not to be held liable for his failure to do so. A state of case also might arise in which the vice-president or other officer of the bank might be held liable for the failure to give notice, as when it was shown that the officer sought to be charged with liability was guilty of fraud or it was shown that he in some manner actively prevented the giving of notice, but we have no such state of case here. It is usual and customary for the cashier of the bank to look after matters of this kind, and in the absence of any showing that it was not the custom of the cashier of the first National Bank to attend to the protesting of paper and the giving of notice of dishonor, we must presume that it was the duty of the cashier to have discharged this duty in respect to these notes.

Nor do we think that the fact that Bickel was an officer of the bank relieved the bank from the necessity of giving him notice. Bickel signed the paper not as an officer of the bank but as an officer of another corporation borrowing money from the bank, and his rights and liability on the paper are precisely the same as those of the other parties who signed it. The statute, requiring that notice of dishonor shall be given, is peremptory, and all persons entitled to the notice are released from liability unless it is given, although they may be connected with the bank, whose duty it is to give notice, as officers or in some other capacity, with the exception that the bank officer whose duty it was to give notice would be of course estopped to plead want of notice as a defense to a suit by the bank against him.

We think the judgment in each case should be affirmed, and it is so ordered.