DEWITT BERGEN

*vs.*

JOHN H. TRIMBLE.

*Negotiable instruments: accommodation endorser; when de-
mand and notice are unnecessary; Code, Article
13, sections 99 and 134.*

Under the Negotiable Instruments Act, Code of 1912, Article
13 (sections 99 and 134), where a promissory note is made for
the accommodation of the endorsers, who had no reason to ex-
pect that the note would be paid by the maker if presented,
demand on the maker and notice of non-payment is not neces-
sary in order to bind the endorsers.                        p. 564

The fact that the loan was not made for the sole benefit of
such endorsers does not change the character of the endorse-
ment in respect to the necessity for demand and notice.  p. 564

*Decided May 9th, 1917.*

Appeal from the Superior Court of Baltimore City.
(Ambler, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe,
Burke, Thomas, Pattison, Urner, Stockbridge and Con-
stable, JJ.

*Edgar Allan Poe* (with a brief by *Bartlett, Poe & Clag-gett*), for the appellant.

*John D. Nock* (with whom were *Benson & Karr* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

The suit in this case was brought by the appellant, DeWitt Bergen, against Frank W. Trimble and John H. Trimble, co-partners, trading as F. W. Trimble and Brothers as endorsers upon the following promissory note:

"$4,000.00.                     Baltimore, June 1st, 1910.
    Three months after date I promise to pay to the
    order of F. W. Trimble and Brother Four Thousand
    Dollars, at               with interest.
                                    John Cowan."

This note was endorsed by F. W. Trimble and Brother to the plaintiff, DeWitt Bergen, the present holder, who at its maturity instituted suit thereon. At the conclusion of the plaintiff's testimony the Court, at the instance of the defendant, granted the following prayer: "The Court instructs the jury that there is no evidence legally sufficient to entitle the plaintiff to recover, and the verdict must be for the defendant." The jury, in obedience to such instruction, rendered a verdict for the defendant, and upon that verdict a judgment was entered for defendant's costs. It is from that judgment this appeal was taken.

The note was not presented for payment at maturity and no notice of its dishonor was given to the endorsers.

The only question involved in this appeal was whether the plaintiff was entitled to recover without presentation of the note for payment at maturity, and without notice to the endorsers of its dishonor.

In the determination of this question the following sections of Article 13 of the Public General Laws of this State are involved:

"Section 99. Presentment for payment is not required in order to charge an endorser where the instrument was made or accepted for his accommodation, and he has no reason to expect that the instrument will be paid if presented."

"Section 134. Notice of dishonor is not required to be given to the endorser * * * where the instrument was made or accepted for his accommodation."

It is contended by the plaintiff that the evidence offered shows, or at least tends to show, that the promissory note in question was made for the accommodation of the defendants, within the meaning of the statute, and therefore to entitle the plaintiff to recover it was not essential that the note should have been presented for payment, or notice of its dishonor given to the endorsers, and that the instruction of the Court directing a verdict for the defendant was erroneously given.

The facts and circumstances leading up to and surrounding the execution of the note, as disclosed by the record are briefly as follows:

The defendants were, in 1908, largely interested in a corporation known as the Dudley Adding Machine Company. As expressed by one of the witnesses, this company "was practically F. W. Trimble & Bro. who held certain patent rights with the inventor Dudley, subject to a royalty agreement held by the Numerograph Company," by which the Numerograph Company was to be paid a royalty of $10 on each and every machine manufactured by the Dudley Company.

The defendants with Cowan and others became interested in the formation and organization of another company for the manufacture and sale of adding machines, which was to take over the Dudley Adding Machine Company, with its above mentioned patent rights, subject as we have said to the royalty rights of the Numerograph Company.

The new company it seems had been incorporated, though its stock had not at such time been distributed or disposed of. It was at this stage in the promotion of the company that those interested therein, including the defendants and Cowan, proceeded to sell its stock, but found they could not do so owing to the royalty rights of the Numerograph Company. It was then decided to purchase such rights.

Five thousand dollars were required to purchase these rights, and this amount in addition to the sum of one thousand dollars, which was needed for the payment of certain expenses to be incurred in launching the enterprise, was borrowed from the plaintiff, and to secure the payment of said loan a note of six thousand dollars, signed by Cowan payable to F. W. Trimble & Bro. and endorsed by said firm, was delivered to the plaintiff. Payments were made upon this and renewal notes given therefor, until the amount of said indebtedness was on June 1st, 1910, reduced to four thousand dollars, at which time the note in question was executed and delivered to the plaintiff.

The amount of the loan, six thousand dollars, secured by the original note, was paid by two checks both drawn by the plaintiff to Cowan, one for five thousand dollars and the other for one thousand dollars and sent to Harry E. Karr, counsel for Trimble & Bros. and also for them and others in the promotion and organization of the new corporation. Cowan called at the office of Mr. Karr and there endorsed the checks. Five thousand dollars of the amount realized on said checks were paid by Karr to the Numerograph Company for the purchase of its aforesaid royalty rights, but it is not shown to whom such rights were assigned, and the remaining one thousand dollars was applied either by Karr or Cowan to the payment of certain expenses to which we have already alluded. The payments upon the original and renewal notes were made by Cowan but whether from his own individual money or from money derived from other sources it is not disclosed, except as to three hundred dollars, which is said to have been re-

ceived "from the Creditors' Committee of John Cowan."
The character of this committee, or how, or for what purpose
it was created, is not disclosed by the evidence. The testi-
mony however discloses that before the note of four thousand
dollars became due and payable Cowan informed the en-
dorsers that he would not be able to pay the note at maturity,
and that it would have to be renewed, but the endorsers re-
fused to renew it.

Bergen testified that the money was loaned by him to
Cowan and Trimble Bros. for the purpose of putting it into
an adding machine business, mad esimply as a loan to them;
as they were short of funds at that time Miller who acted
for Bergen in the negotiaion of the loan testified that "the
Trimbles, with Mr. Cowan, Mr. Davis and Mr. Karr, wanted
some money. They asked me if I could get it from Mr.
Bergen and I presented the matter to Mr. Bergen and got
the money." Davis it seems was in some way interested in
the transaction.

Miller further testified that these people "in order to go
ahead with their promotion were obliged to pay five thou-
sand dollars (for the royalty rights of the Numerograph
Company) and they did not have the money, so they stated.
They wanted the money for that purpose, together with an
extra thousand dollars for equipping offices in Philadelphia."
He was then asked was anything said at the time that you
arranged the loan as to the form that that loan was to take;
as to whether it was to be evidenced by a note or a bond or
otherwise? A. They were to give a note. Q. What was the
arrangement as to who was to give the note and the amount
of same when you say they were to give a note to Mr. Bergen?
A. Mr. Cowan, endorsed by defendants. Q. Was anything
said at this conference, and if you remember, by whom as to
this five thousand dollars? A. Yes. Q. By whom was it
said, if you remember? A. By all of them. It was a gen-
eral conversation. Q. What was said? A. That the money
was to be raised by the Trimbles to clear their title to hold
the patent.

If the money was loaned to the defendants for their sole benefit, the note, though signed by Cowan as maker, was made for their accommodation and no demand of payment of the note at maturity was necessary, and no notice of its dishonor was required to be given the defendants as endorsers.

If the loan was made to Cowan and the defendants for their *joint* benefit and the repayment of that loan was to be secured by a note, executed, by agreement between them, in the manner and form, shown by the record, there was an obligation on the part of both the defendants and Cowan to pay the note at maturity.

The fact that the loan was not made for the *sole* benefit of the defendants does not change the character of the endorsement in respect to demand for payment or notice of dishonor. They were nevertheless, in our opinion, accommodated endorsers within the meaning of the statute; and the plaintiff was not required to make demand upon Cowan or give notice to the defendants of the non-payment of the note. *Bank of Washington* v. *Way,* 2 Cranch Circuit Court Reports, 249.

The evidence offered we think was legally sufficient to go to the jury as tending to show that the note was made for the accommodation of the endorsers within the meaning of the statute, and that their endorsement thereon was that of accommodated endorsers, who had no reason to expect the note would be paid by the maker if presented for payment.

The cases of the *First National Bank* v. *Bickel,* 143 Ky. 754 and *McDonald* v. *Luchenbach,* 170 Fed. 434, which were cited to us by the defendants in support of their contention, in which the endorsers were held to be entitled to notice of dishonor, differ widely from the case before us.

In each of those cases the loan was made to the corporation, and to secure the repayment of the loan, the note of the corporation, payable to the plaintiff and signed by its President, and endorsed by him and other directors of the corporation, were delivered to the plaintiff.

In the latter case JUDGE GRAY, speaking for the Court, said: "There is no evidence disclosed by the record tending to show that anything else was contemplated by those who negotiated this loan than that it was to be a loan to the corporation, for the promotion of its business, for which the corporation was to be primarily bound by the promissory note which it made, and that the directors who loaned their credit by endorsement assumed the secondary liability of endorsers and no other. * * * All the evidence tends to show that the payee of the note had no other thought then that the security he held for his note was what it purported to be on its face, *i. e.*, the primary liability of the corporation, as maker, and the secondary liability of the defendant and his two colleagues as endorsers.

In the case before us, as the evidence tends to show, the loan was not made to either of the corporations mentioned in the record, but to Cowan and the defendants, and the note given to secure such loan was signed not by either of said corporations, but by Cowan as maker and endorsed by the defendants in accordance with an express agreement between them made in the presence of the plaintiff to whom it was thereafter delivered; and it was upon them alone that the plaintiff relied for the repayment of said loan.

It follows from what we have said that the judgment of the Court below will be reversed and a new trial awarded.

*Judgment reversed and new trial awarded,
with costs to the appellant.*