## Greenwade v. First National Bank of Louisa.

(Decided June 9, 1931.)

JOE P. TACKETT and F. M. BURKE for appellant.

FRED M. VINSON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Affirming.

This appeal brings here for review the usual eventuality of engagements of business men who, to enlarge their incomes, venture into an undertaking in which they have had no experience and have not sufficient time from their regular occupations to promote its success.

The Lobaco Company, a corporation, was organized and engaged in operating a bakery, a bottling plant, and an ice plant at Louisa, Ky. Prior to January, 1923, William Greenwade, W. R. Davis, E. E. Shannon, H. G. Wellman, and J. N. Marcum were directors of the corporation. In January, 1923, Marcum and Wellman retired when G. R. Vinson, J. L. Huddleston, William Greenwade, W. R. Davis, and E. E. Shannon were elected directors and served as such during the progress of the transactions here involved. At that time the accounts receivable of the corporation amounted to approximately $17,000. The accounts payable were approximately $12,000. The accounts receivable were regarded as good and collectible. It was agreed by the directors that they would raise money for the corporation by the borrowing of $15,000. To procure the load, three notes of $5,000 were executed, one was signed by W. R. Davis, indorsed by E. E. Shannon, J. L. Huddleston, William Greenwade,

and J. R. Vinson; another was signed by William Greenwade, indorsed by Shannon, Davis, Huddleston, and Vinson; the third was signed by Huddleston, indorsed by Shannon, Davis, Greenwade, and Vinson. The company executed its note to each of them for $3,000. The three $5,000 notes were payable to the Lobaco Company, discounted at the First National Bank of Louisa, the proceeds placed to its credit. In July, 1925, the directors took up the three $5,000 notes and interest up to that date. In this transaction W. R. Davis as maker, and Shannon, Vinson, and Greenwade as indorsers, executed a note to the First National Bank of Louisa for $3,180.80, as one-fifth part of the $15,000 note and interest, which note was renewed by them from time to time; the last renewal being executed July 8, 1927.

The Lobaco Company was indebted to the First National Bank of Cincinnati, Ohio, in the sum of $10,000 evidenced by note executed by it and indorsed by William Greenwade, W. R. Davis, E. E. Shannon, J. L. Huddleston, and G. R. Vinson. The Lobaco Company was placed in the hands of a receiver in September, 1924. The First National Bank of Cincinnati refused to accept a renewal of the note of the Lobaco Company, protested it, and gave notice of protest to the indorsers. To take up the $10,000 note of the Lobaco Company to the First National Bank of Cincinnati, a note for $10,000 payable to it was executed by Davis, Huddleston, Shannon, Vinson, and Greenwade. On December 8, 1924, this $10,000 note was protested by the Bank of Cincinnati and notice of protest given to the makers. At that time the Lobaco Company had issued bonds in the sum of $50,000, all of which had been placed as collateral to secure certain obligations of the company except $7,600 of them. The proceeds of this $7,600 of the bonds were applied to the payment of the $10,000 note to the First National Bank of Cincinnati, leaving $2,500 to be paid by its makers. According to an arrangement among the directors, this $2,500 balance was apportioned among, and paid by, them, except $500 which was apportioned to W. R. Davis. He paid on this amount $100, and executed his note for the balance of $400, payable to the First National Bank of Louisa, which was indorsed by G. R. Vinson, William Greenwade, E. E. Shannon, and J. L. Huddleston. This note was renewed until August 5, 1926, by W. R. Davis and by the indorsement of the same parties who were on the original. When the $3,180.80 note and the $400 note

would become due, the bank would mail a renewal to Davis, or to some one of the indorsers, and they would mail same from one to the other until the signatures were obtained, then it would be delivered to the bank. During this time Huddleston resided at Mohawk, W. Va.; Greenwade at Cliff, Floyd county, Ky.; Davis at Thelka, Johnson county, Ky.; Shannon and Vinson at Louisa, Ky.

In 1926 Huddleston refused to continue to indorse for Davis. In May, 1921, the Lobaco Company was indebted to the Bank of Louisa in the sum of $3,000 evidenced by its promissory note which was indorsed by B. E. Adams. At the same time the Lobaco Company was indebted to the National Bank of Louisa in the sum of $2,000 evidenced by note indorsed by B. E. Adams. These two notes were renewed and on the renewals different directors of the Lobaco Company became indorsers. In May, 1923, the $3,000 and the $2,000 notes were renewed by combining the two into one note for $5,000, which was signed by the Lobaco Company and indorsed by William Greenwade, E. E. Shannon, G. R. Vinson, and W. R. Davis. It was renewed from time to time, the interest being added until it amounted to $5,770.67, when on the 28th day of June, 1927, the Lobaco Company executed its note to the First National Bank of Louisa for $5,770.67, the interest and principal of the original notes of $3,000 and $2,000, with E. E. Shannon, William Greenwade, Vinson, and Davis as indorsers. On March 14, 1923, the Lobaco Company was indebted to the First National Bank of Louisa in the sum of $1,000 evidenced by note executed by it and indorsed by E. E. Shannon, William Greenwade, W. R. Davis, and G. R. Vinson. This note was renewed from time to time until July 8, 1927, when again the Lobaco Company executed and delivered its note to the First National Bank of Louisa for the sum of $1,158.98, the principal and interest of the original $1,000 note which was indorsed by E. E. Shannon, William Greenwade, W. R. Davis, and G. R. Vinson. The last renewals of the $3,180.80, $400, $5,770.67, and $1,158.98 notes on the dates of their respective maturity were neither renewed nor paid. The First National Bank of Louisa filed an action against William Greenwade, E. E. Shannon, G. R. Vinson, and W. R. Davis to recover on the notes of $5,770.67 and $1,158.98. Another action was filed to recover of W. R. Davis, William Greenwade,

G. R. Vinson, and E. E. Shannon on the $3,180.80 note. An action was filed on the $400 note against Davis, Greenwade, Shannon, and Vinson. By agreement of the parties these three actions were consolidated with another action against Greenwade and others on another note not here involved. Default judgments were rendered against Vinson and Shannon. To prevent a recovery against themselves, Greenwade and Davis interposed, among other defenses, the failure of the bank to give notice of protest to them as indorsers of the notes. Issues were made up by proper pleadings. On submission the trial court rendered judgment for the appellee against Greenwade and Davis, from which Greenwade now appeals.

He insists that he is now discharged from liability on all four notes because the appellee failed to protest and to give notice of dishonor to him on maturity of the notes within the time fixed by section 3720b-155, Ky. Statutes. He cites, to sustain his contention, First National Bank v. Bickel, 154 Ky. 11, 156 S. W. 856; Grayson County Bank v. Elbert, 143 Ky. 750, 137 S. W. 792; Mechanics' & Farmers' Savings Bank v. Katterjohn, 137 Ky. 427, 125 S. W. 1071, Ann. Cas. 1912A, 439. The rule stated in these cases is that one who indorses a note to enable the maker to negotiate and discount it for his own benefit must be given notice of protest of dishonor, otherwise he is discharged from his liability as indorser. The facts in the present case distinguish it from the cases supra.

> "Presentment for payment is not required in order to charge an endorser where the instrument was made or accepted for his accommodation, and he has no reason to expect that the instrument would be paid if presented." Section 3720b-80, Ky. Statutes. "Notice of dishonor is not required to be given to an endorser . . . where the instrument was made or accepted for his accommodation." Section 3720b-115, Ky. Statutes.

The appellant was one of the makers of the $10,000 note of the bank at Cincinnati. After it was protested and notice thereof given to appellant, it was reduced to $2,500 by the application of the proceeds of $7,600 bonds of the company, which balance was apportioned among the directors. The $400 note was to that amount a con-

tinuation and mere change of the evidence of the balance of the $10,000 note.,

The appellant was the maker of one of the three $5,000 notes to the Bank of Louisa, executed for the $15,000, borrowed from the appellee for the benefit of the Lobaco Company. After the three $5,000 notes matured, the amounts of the three were apportioned among the directors by themselves. To cover the balance thereof they apportioned to Davis the amount of the $3,180.80 for which a note accordingly was executed and delivered to the appellee by him with the appellant and his other associate directors as indorsers. This note was a continuation of a balance of the appellant's $5,000 note and the other two $5,000 notes. Its execution and delivery in so far as it concerned appellee was a mere change of the evidence of a part of the same indebtedness. It cannot be said that appellant merely loaned his credit as an accommodation to Davis when signing as an indorser the $400 and the $3,180.80 notes.

The $1,158.98 and the $5,770.70 notes in reality were renewals of the notes of the Lobaco Company executed and delivered by it to the appellee. He was a director of the Lobaco Company at the time of the execution of the original notes and continued to serve in this capacity until the last renewal notes. The corporation of which he was a director having gone into the hands of a receiver in September, 1924, these notes were renewed as a matter of convenience to themselves from September, 1924, in the name of the corporation, and indorsed by directors, including the appellant, from that time until the dates of the last renewals of the notes. At the time the corporation went into the hands of a receiver he was bound and liable to the appellee on these notes. The fact that the corporation was placed in the hands of a receiver necessarily brought knowledge to him that his corporation on account of its insolvency could not and would not pay them. His indorsement of the notes after his knowledge of the status of his corporation was not done by him for the accommodation of his corporation but for his own accommodation and in consideration of the extension of time by the bank for the payment of the notes. After his corporation was placed in the hands of a receiver he had no reason to expect that the notes when presented to it would be paid. It is plain that the two Davis notes and the two Lobaco Company notes were indorsed by the appellant and the other directors for their own accommo-

dation. By indorsing them he and they thereby induced the bank not only to accept them but to surrender to him and his codirectors the original notes, and to extend the time for their payment. A recitation of the history of the four notes and of the liability of the appellant on the original notes for which they were executed and delivered shows that he was not indorsing them as a mere accommodation to Davis and the Lobaco Company, but by their execution and delivery he was thereby securing time in which to take care of his own liability on the original notes and procuring their surrender to him and his codirectors by the bank.

It is true that a mere accommodation indorser, even though he knows that the note will not be paid when presented to the maker because of the maker's insolvency, is entitled to notice of protest of dishonor. Taylor v. Bank of Illinois, 7 T. B. Mon. 576. But if the indorser is under obligations to supply funds to meet the payment of the note, or if it was made for his own accommodation, a different rule obtains. He is not entitled in either of such cases to presentment, protest, and notice of protest. American National Bank v. Junk Bros. Lbr. & Mfg. Co., 94 Tenn. 624, 30 S. W. 753, 28 L. R. A. 492; Crawford's Negotiable Instrument Law, sec. 80, p. 153; Daniel on Negotiable Instruments (2d Ed.), sec. 1085, p. 123; Park Bank v. Naffah, 276 Pa. 199, 119 A. 923; Overland Automobile Co. v. Winters, 277 Mo. 425, 210 S. W. 1; Bergen v. Trimble, 130 Md. 559, 101 A. 137; Barbaroux v. Waters, 3 Metc. (60 Ky.) 304; Brannan's Negotiable Instrument Law, sec. 80.

Even if the $400 and the $3,180.80 Davis notes be not regarded as a continuation of the liability of the appellant by reason of his being one of the makers of the original notes for which these were executed and delivered in satisfaction, and in lieu, of the balance thereof, and therefore not within the rule enunciated by the authorities supra, the $1,180.98 and the $5,770.69 are plainly within it. For the Lobaco Company was defunct long prior to the date of these two notes and the receiver had performed its mortuary ceremonies of which appellant as one of its directors had actual knowledge. Therefore, appellant as indorser was one of the real parties whose legal duty it was to make provision to pay the notes at maturity. He was not entitled to presentment or notice of protest required to be given to an ordinary accommodation indorser in order to fix his lia-

bility. There was a sufficient consideration for his indorsing the Lobaco Company notes. A ''consideration'' is a reason which moves contracting parties to enter into the undertaking. It is the price, motive, the matter of inducement to contract, whether it be compensation which is paid or the inconvenience which is suffered by the party from whom it proceeds. Farmers' Bank of White Plains v. Williams, 205 Ky. 261, 265 S. W. 771. The extension of time by the Bank of the payment of the $1,180.98 and the $5,770.70 notes after the Lobaco Company ceased to exist was sufficient consideration to take the indorsing directors out of the category of accommodation indorsers. Section 3720b-25, Ky. Statutes; American National Bank v. Minor & Son, 142 Ky. 792, 135 S. W. 278.

Presentment for payment may be waived. Section 3720b-82, Ky. Statutes. ''Notice of dishonor may be waived, either before the time of giving notice has arrived, . . . and the waiver may be express or implied.'' Section 3720b-109, Ky. Statutes; Doherty v. First National Bank of Louisville, 170 Ky. 810, 186 S. W. 937; Farmers' Bank & Trust Co. v. Dent, 206 Ky. 405, 267 S. W. 202.

Viewing the case in the light of these statutory provisions and the proven facts even if he were entitled to such notice we cannot say that the trial court erred in holding that the appellant had waived notice of presentment, protest, and dishonor. Notice of protest of the $3,180.80 note was made out and mailed by the notary, properly stamped, and addressed to appellant on the date of its maturity. This was sufficient as to this note. Section 3720b-104, Ky. Statutes; Hickman v. Ryan 5 Litt. 24; Stivers v. Prentice, 3 B. Mon. 461; McClane v. Fitch, 4 B. Mon. 600.

When the $400 and the $3,180.80 notes would mature, the appellee would prepare renewals and deliver them to the maker, or some one of the indorsers, who would pass them from one to the other until their signatures were affixed to the renewals, when they would be delivered to the bank. Some time was required to secure the signatures and the delivery of the renewal notes. This method of executing and delivering the renewal notes strongly indicates that notice of protest and dishonor was intended to be and was thereby waived by the parties interested in them. This presumption is substantiated

68

by the testimony of the witnesses to the effect that on dfferent occasions the cashier of the bank of Louisa who was also a member of the board of directors of the Lobaco Company, inquired of the appellant and his associate directors while they were in session as a board, if it was desired or expected of the bank to present for payment and give notice of protest and dishonor of its and their notes. Whereupon appellant and his codirectors agreed it was not necessary or expected. This agreement applied to the Davis notes and to the $1,158.98 and the $5,770.70 notes of the Lobaco Company. The trial court accepted the evidence offered in this regard in behalf of the appellee and based its judgment thereon. It is an established rule in this court that where the evidence is conflicting, if the judgment of the chancellor is not against a preponderance of the evidence, to sustain his finding of facts. We find no reason in the record for departing from this rule in this case.

Wherefore the judgment is affirmed.