## OVERLAND AUTO COMPANY v. C. F. WINTERS et al.; W. B. STRANG, Appellant.

### Division Two, March 17, 1919.

1. **NEGOTIABLE NOTE: Signature on Back.** Under the Negotiable Instrument Law (Sec. 10033, R. S. 1909) a person who places his name upon the back of a negotiable note is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity.

2. ———: ———: **Parol Evidence.** And the words of the statute "unless he clearly indicates by appropriate words his intention to be bound in some other capacity" mean words written on the instrument itself, and hence the legal effect of a blank indorsement cannot be changed or varied by parol evidence or from any other source.

3. ———: ———: **Pleading.** If the note sued on is set out in full in the petition and shows that the name of one of the defendants appears on the back thereof, it shows him to be an indorser and to be sued as such, and this setting forth of the note corrects any misrecitation in a prior paragraph of the petition that said defendant was a co-maker.

4. ———: **Indorser: Notice.** Unless an indorser comes within the exceptions mentioned in the statute (Secs. 10050 and 10085, R.

Auto Co. v. Winters.

S. 1909), notice of dishonor by non-payment or presentment for payment must be made, or he will be discharged.

5. ———: ———: ———: **Exception: Party Accommodated.** If the indorser of a negotiable note is the party accommodated by making the instrument, he is not entitled to notice as provided· by Section 10085, nor is it necessary under Section 10050 to show presentment unless he had no reason to expect the note would be paid when presented. But "the party accommodated" is the one for whose convenience the paper was made, and that usually means the maker or drawer, and not the indorser.

6. ———: ———: **Party Accommodated: Definition.** Section 10050 says that "presentment for payment is not required in order to charge an indorser where the instrument was made or accepted for his accommodation" and Section 10085 says that "notice of dishonor is not required to be given to an indorser where the instrument was made or accepted for his accommodation." *Held*, that the word "accommodation" means a convenience, favor or benefit, or an arrangement or engagement made as a favor to another, not upon a consideration received, and "the party accommodated" is the one for whose convenience the paper is made. The accommodation party is the one who signs the note for the purpose of "lending his name to some other person," and the other person is necessarily the accommodated party.

Appeal from Jackson Circuit Court.—*Hon. Allen C. Southern,* Judge.

REVERSED.

*Bowersock & Fizzell* for appellant.

(1) The usual requirements of presentment and notice are limited in the case of an accommodated indorser by Sec. 10050 and 10085, R. S. 1909. If, therefore, Winters made the note in question for Strang's accommodation, Strang, an accommodated indorser, would not be entitled to have the note presented to Winters for payment, if he had reason to expect that the note would not have been paid if presented, and he would not be entitled to notice of dishonor. Strang was not an accommodated indorser, but occupied the position of an ordinary indorser entitled to the rights of presentment and notice. There is not in the evi-

dence the slightest ground for saying that Winters made the note in question for Strang's accommodation. The matter of accommodation is carefully dealt with by the Negotiable Instruments Act. Sec. 10000, R. S. 1909. Can it possibly be said that Winters signed this note "without receiving value therefor and for the purpose of lending his name to some other person," i. e., Strang? The testimony of Dougherty, the payee, is directly to the contrary. Dougherty did not desire Winters' name on the note in order to make the paper good. He did want Strang's name on the instrument for that very reason. Winters did not sign as an accommodation maker for Strang, and Strang was not an accommodated indorser. Both Winters and Strang signed the note because they were interested in the deal, but neither signed "without receiving value therefor, and for the purpose of lending his name" to the other. The evidence not only fails to show that Strang was an accommodated indorser, but it is inconsistent with any such showing. Dougherty testifies with particularity that he sold the car to Winters and Strang and received the note in part payment. If that is a fact, then Strang was not an accommodated party, and evidence that he was would contradict the only testimony introduced by plaintiff on the trial.

*Jas. C. Rieger* for respondent.

(1) The Negotiable Instrument Act excuses both presentment and notice where the indorser is a primary obligor; this was the rule of the Law Merchant, under which law proof of the fact constituting the excuse could be made *aliunde* the note; the statute having adopted the rule of the law merchant as to the excuse will, in the absence of an expression of a contrary intention, be presumed to have adopted along with the rule the right to make the proof *aliunde* the note. Story on Promissory Notes (7 Ed.), sec. 268; Edwards on Bills, p. 638; Daniels on Neg. Inst. (6 Ed.), sec. 1085;

Randolph on Com. Paper, sec. 1354; Blanderman v. Price, 50 N. J. L. 296; Donnell v. Lewis County Savings Bank, 80 Mo. 165; Webster v. Mitchell, 22 Fed. 869; First Natl. Bank v. Ryerson, 23 Iowa, 508; Fulton v. Maccracken, 18 Md. 528; Shriner v. Keller, 25 Pa. St. 61; American Natl. Bank v. Junk Bros., 94 Tenn. 624. The fact excusing presentment and protest could be shown *aliunde* the note; it was not necessary for the fact to appear upon the note. Churchill v. Grocer Co. 164 S. W. (Ark.), 283; Sweetser v. Jordan, 216 Mass. 350; Donnell v. Lewis County Savings Bank, 80 Mo. 165; Webster v. Mitchell, 22 Fed. 869. This statute clearly shows that it contemplated an indorser may be accommodated by the maker as well as accommodating the maker, and it adopts the rule of the Law Merchant excusing presentment and notice where the indorser is himself the accommodated party. Now, in adopting this rule of law, the Legislature also adopted the rule of evidence of the Law Merchant. This uniform Negotiable Instrument Act permits proof outside of the instrument to show the existence of the fact on account of which the statute makes it unnecessary to make presentment and give notice. Such proof does not show that the indorser was a maker. It simply shows that though indorser and not maker, the note was for his accommodation. This does not change or alter the note in any particular. It simply shows what kind of an indorser he is. Bank v. Bickel, 143 Ky. 754; In re Alldred's Estate, 229 Pa. St. 627; Baumeister v. Kuntz, 53 Fla. 340; Hardwick v. Hardwick, 192 N. Y. 499; 19 L. R. A. (N. S.) 136 and note; Cox v. Henry, 184 S. W. 495; Rodgers v. Slavens, 101 Kans. 4; State Bank v. Pangest, 165 N. W. (Minn.) 479, and Lehigh Trust Co. v. Strause, 258 Pa. St. 382; Morgan v. Thompson, 72 N. J. L. 244. (2) The case is still stronger where the maker and indorser are partners and execute the note in the partnership business. 2 Daniels on Neg. Inst. (6 Ed.), sec. 1086; Harwood v. Jarvis, 15 Sneed, 375; Story on Bills (Bennett's Ed.),

313 (a); Rhett v. Poe, 2 How. 457; Hays v. Citizens Sav. Bank, 101 Ky. 201. Rhett v. Poe, 2 How. (U. S.) 457, 483. (3) The evidence proved that the note was made for the accommodation of Strang. The evidence clearly proved that Winters & Strang together bought the car for their joint use in their joint business, and gave the note in part payment for the car. This made the note for Strang's accommodation as much as it was for the accommodation of Winters. It was Strang's debt as much as it was the debt of Winters. It was a partnership transaction. This was the view taken of the facts in the court's former opinion, and is the correct view. (4) No presentment is required where the indorser and maker are both primary obligors. This appears from the authorities hereinbefore cited. This is expressly declared in the act (R. S. 1909, sec. 10040). This was the rule of the Law Merchant, and this rule has been adopted by the statute.

WHITE, C.—This suit is on a promissory note. The judgment in the circuit court of Jackson County was for the plaintiff; the case was appealed to the Kansas City Court of Appeals, where the judgment of the circuit court was reversed in a majority opinion written by Judge TRIMBLE; Judge ELLISON dissented and caused the case to be certified to this court for final determination.

We cannot do better than to adopt the statement of the facts and in the main the exposition of the law by the majority opinion of the Kansas City Court of Appeals:

"Plaintiff, as assignee for value before maturity of a negotiable promissory note, brought suit thereon against C. F. Winters and W. B. Strang. While the petition alleged that 'defendants by their promissory note herewith filed, dated May 1, 1911, for value received, promised to pay,' etc., yet it also set out the note on the face of the petition in words and figures as follows:

"$460.00        Kansas City, Mo., May 1, 1911.

" 'Ninety days after date we promise to pay to the order of H. A. Dougherty, four hundred sixty and no-100 dollars, at Kansis City, Mo. Value received with interest at eight per cent. per annum.

C. F. WINTERS.

" 'W. B. STRANG (on back).' ' "

"The petition then alleged the assignment of the note to plaintiff before maturity; that $50 had been paid thereon February 23, 1912; and that the remainder was due and unpaid, for which judgment was asked. Defendant Winters filed an answer admitting the execution of the note, but denied that there was any consideration therefor between him and the plaintiff. Plaintiff filed a reply to this answer in which the plea of no consideration was denied. Defendant Strang filed a separate answer in which he denied, under oath, the execution of the note sued on, and also denied generally all the allegations of the petition.

"At the trial a jury was waived. The note was introduced showing Winters' signature at the bottom, in the usual place for the payor's name, and the name of W. B. Strang on the back. This was admitted to be Mr. Strang's signature. The plaintiff then introduced Dougherty, the payee of the note, who testified, without objection from either defendant, that the note was given under the following circumstances: Dougherty was agent for the Overland Auto Company and was selling automobiles for said company. Winters came to him and said he and Mr. Strang wanted to buy an automobile for use in the land business of Overland Park, and he asked Dougherty if he would take a note for part payment of the machine. Dougherty replied that he would look up the matter and let him know. Dougherty further testified that his company would not allow him to take notes directly to it in payment of machines, but, owing to Strang's financial standing, he concluded to take the note himself and give his personal check to the com-

pany for that amount. Dougherty then notified Winters that they could buy a machine in the way they proposed if he had one that suited them. Winters and Strang then came to Dougherty's place of business, where Dougherty told the latter of his decision to accept the note and pay the cash therefor to the company himself in view of Strang's standing. Strang and Winters then picked out a car, and Dougherty drove it about for them, demonstrating it and otherwise going through the preliminaries necessary to make a sale. Strang at first objected to the color of the car, saying he wanted a gray car, while this was blue. But he finally decided to take it, saying, 'We will take this one.' Thereupon Dougherty drew up the note and handed it to them. There were some alterations to be made in the car, so that it was not ready for delivery until the next day. When it was ready, the money due on the car was paid, and the note, signed as above shown, was delivered, and the car turned over to defendants. No understanding was had between Dougherty and Strang as to how the note should be signed, that is, nothing was said about it, though Dougherty wrote the note 'We promise to pay,' etc.; but when it was delivered no objection was made to its being signed the way it was.

"The petition did not allege that notice of dishonor was given to Strang, nor did it allege any facts to show that, as an indorser, he was not entitled to notice; and, unless the evidence outlined above presents facts which relieve the necessity of notice, no showing of the kind was made.

"At the close of plaintiff's evidence, counsel for Strang offered a demurrer in his behalf, saying as it was presented:

" 'We ask a finding in the nature of a demurrer on the part of defendant Strang, on the ground that he is an indorser on the note, and there is no proof of presentation to the maker and notice to the indorser.'

"The court overruled the demurrer, and the defendants introduced no testimony. Whereupon the court found for plaintiff and rendered judgment against both defendants for the amount due on said note. The defendant Strang alone appealed.

"The principles by which the question of defendant Strang's liability is to be determined vary according to the interpretation placed upon the petition. If that pleading be considered as charging both defendants with liability as makers of the note, then the question is: Can parol testimony be permitted to change the written instrument sued on, by showing that Strang is not an indorser as the note says he is, but is in reality a co-maker with Winters? Before the enactment of the Negotiable Instruments Law (approved April 10, 1905, Laws 1905, p. 243, and now forming Chapter 86, Revised Statutes 1909), the rule in this State was that:

" 'One who writes his name on the back of a note of which he is neither the payee nor indorser, becomes prima-facie liable as co-maker and will be held to be such in the absence of extrinsic evidence that it was the contract or understanding of the parties at the time he so indorsed it that he should be liable only as indorser.'

"See First National Bank v. Guardian Trust Co., 187 Mo. 494, l. c. 518, 70 L. R. A. 79.

"But this rule is changed by Section 63 of the Negotiable Instruments Act (now Sec. 10033, R. S. 1909), which reads as follows:

" 'A person placing his signature upon an instrument otherwise than as maker, drawer, or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity.'

"And said rule is also changed by Section 64 of said act (now Sec. 10034, R. S. 1909), which reads as follows:

" 'Where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery, he is liable as indorser,' etc.

"See Walker v. Dunham, 135 Mo. App. 396; Thorpe v. White, 188 Mass. 333, 1. c. 334; Toole v. Crafts, 193 Mass. 110, 118 Am. St. 455; Gibbs v. Guaraglia, 75 N. J. L. 168; Far Rockaway Bank v. Norton, 186 N. Y. 484; In re Alldred's Estate, 229 Pa. 627.

"The clause in Section 63 of said act, 'unless he clearly indicates by appropriate words his intention to be bound in some other capacity,' undoubtedly means words written upon the instrument itself, and hence this is a statutory command that the legal effect of a blank endorsement cannot be changed or varied by evidence from another source. [Porter v. Moles, 151 Iowa, 279; Neosho Milling Co. v. Farmers' Co-operative Co., 130 La. 950; Deahy v. Choquet, 28 R. I. 338, 14 L. R. A. (N. S.) 847; Baumeister v. Kuntz, 53 Fla. 340; Rockfield v. First Nat. Bank, 77 Ohio St. 311, 14 L. R. A. (N. S.) 842; First National Bank v. Bickel, 143 Ky. 754.] This last-named case (143 Ky. 1. c. 757, 137 S. W. 1. c. 791) says:

" 'The purpose of the statute is to exclude parol evidence, and to make the written instrument control the rights of the parties. The statute fixing the legal effect of the instrument, parol evidence may not be received to give it a different effect.'

"So that if the petition sued Strang as a co-maker with Winters, plaintiff cannot recover, even though there was no objection to the evidence showing him to be such, since the statute says what legal effect shall be given to such an instrument and the court is not at liberty to give it any other effect.

"But the petition does not charge Strang as co-maker. The note is set out in full on the face of the petition, and it shows Winters to be maker and Strang to be indorser, since it shows Strang's name appears on the back thereof. This fixes the capacity in which Strang

277 Mo.—28

is sued as that of indorser and corrects any misrecitation in the prior paragraphs of the petition. that he was a co-maker. [Burroughs v. Wilson, 59 Ind. 536.] Moreover, the record clearly shows that defendant Strang, in presenting his demurrer to the evidence, recognized that the petition sued him 'as an indorser on the note.' Hence there ought to be no question but that the case must be decided upon the theory that Strang is sued as an indorser.

"Taking up the question of Strang's liability on this theory, what is the result? Section 89 of said act (now Sec. 10059, R. S. 1909), provides that:

" 'Except as herein otherwise provided when a negotiable instrument has been dishonored by . . . nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged.'

"So that, unless Strang comes within the exceptions otherwise provided in the act, he is discharged from liability on the note, since no notice of dishonor was given him, nor was presentment for payment made. The exceptions contained in the act are found in Sections 80 and 115 (now Secs. 10050 and 10085, R. S. 1909), the first of which says: ·

" 'Presentment for payment is not required in order to charge an indorser where the instrument was made or accepted for his accommodation and he has no reason to expect that the instrument will be paid if presented.'

"And the second of which reads:

" 'Notice of dishonor is not required to be given to an indorser in either of the following cases: . . . (2) Where the indorser is the person to whom the instrument is presented for payment; (3) where the instrument was made or accepted for his accommodation.'

"It will be observed that the petition alleges no facts showing that Strang comes within any of these exceptions. So far as the petition goes, Strang is sued

simply as an indorser, and not as an accommodation, or as an accommodated, indorser. It has usually been held that, in a suit against an indorser, presentment and notice must be alleged, or the excuse for the absence thereof must be stated. [8 Cyc. 133; Jaccard v. Anderson, 32 Mo. 188.] However, if presentment, demand and notice are alleged, it seems a waiver thereof may be shown. [Faulkner v. Faulkner, 73 Mo. 327.] But the record does not show any objection to or assault made upon the petition, and we will not decide whether, under such circumstances, it is necessary to plead facts showing that the indorser comes within the exceptions noted by the statute, in which notice of presentment and non-payment is dispensed with. Because if the facts shown by the evidence do not bring Strang within the exceptions, then he cannot be held liable, regardless of the question whether the petition does or does not contain allegations as to his being an accommodation or accommodated indorser.

"Now the evidence does not show that Strang was either an accommodation or an accommodated indorser. Examining that evidence to see what it contains, without regard to whether it can be considered or not, we see that the best that can be said of it is that the car was possibly purchased for both Winters and Strang. But, even if this be true, there is nothing to show that Strang agreed to contract in any other way than as indorser. Dougherty admits that nothing was said about the capacity in which Strang agreed to be bound. So that, so far as the evidence shows, he contracted only as indorser, and plaintiff has sued him only as such, and neither the petition nor the evidence shows that he contracted in any capacity other than as an ordinary indorser. If the evidence shows anything beyond this, it shows that he was in reality one of the purchasers of the car. If he was, then he should have signed the note as maker, but the parties chose to put the contract in writing showing his liability to be that of an indorser, and the Negotiable In-

struments Laws says that, when they do that, his liability shall be that of an indorser, and parol evidence will not be allowed to change it. In other words, whether the evidence, showing him to be a maker of the note be objected to or not, the court must determine Strang's liability according to the contract as written, since the law says that shall determine the matter."

The opinion then holds that there was no evidence to show the defendant was brought within the exceptions mentioned in the Negotiable Instrument Act so as to dispense with notice to him of dishonor.

The majority opinion and dissenting opinion agree that one who signs as an indorser may not by parol evidence be shown to have signed in any other capacity, but under Sections 10050 and 10085 parol evidence may be introduced to show in what character he indorses, whether he is an accommodation party or the party accommodated. If he is the party accommodated by making the instrument, he is not entitled to notice as provided in Section 10085; likewise it is not necessary to show presentment under Section 10050 unless the indorser had no reason to expect the instrument would be paid when presented.

The respondent contends that defendant is the accommodated party and the dissenting opinion of Judge ELLISON so holds, in which case it would be necessary to remand the case so that evidence might be introduced for the purpose of showing whether or not he had reason to expect the instrument would be paid if presented. The difference between the majority opinion and the dissenting opinion arises in regard to defendant's character with respect to the note. It is a difference depending upon the definition of the expression "for his accommodation" as it is used in Sections 10050 and 10085. Respondent bases its position on the proposition that the defendant was the party accommodated by applying the ordinary definition of the term "accommodation." The party accommodated is the one for whose convenience the paper is made. "Accomo-

dation'' is defined in Anderson's Law Dictionary as ''convenience, favor, benefit.'' Respondent quotes the case of First National Bank v. Bickel, 143 Ky. 754, where an accommodated party within the meaning of Section 10050 and 10085 is defined thus: ''The indorser for whose accommodation the instrument was made or accepted is one who receives value therefor.''

But Black's Law Dictionary defines ''accommodation'' in these words: ''An arrangement or engagement made as a favor to another, not upon a consideration received.''

The holding generally of the courts, in considering paper of this character, is not to accept the ordinary definition of accommodation, but to give it a meaning such as the one given by Black. In a sense, every one who makes a note on receiving a consideration for it is the party accommodated. But the expression ''accommodated party'' the ''party for whose accommodation the paper is made'' is nearly always used by the courts in connection with *accommodation paper*. There is no accommodated party without his correlative, an accommodation party. The Negotiable Instrument Act does not define accommodation paper, but does define accommodation party in Section 10000, Revised Statutes 1909, as one who signs an instrument for the purpose of ''lending his name to some other person.'' The ''other person'' necessarily, is the accommodated party. In the case of Rea v. McDonald, 68 Minn. 187, l. c. 191, the court gives this definition: '' 'Accommodation paper' is defined as such as is made, accepted, or indorsed by one party for the benefit of another without consideration. It represents and is a loan of credit to the party accommodated.''

The case of Thom v. Kibbee, 62 N. J. L. 753, l. c. 754, has this: ''The accommodated party, in a legal sense is the person to whom the credit of the accommodating party is loaned, not a third person who may receive an advantage by the loan of the credit.''

The Supreme Court of Hawaii considered the subject in the case of Dillingham v. Scott, 19 Ha. 421, l. c. 426, and said: "It is evident that a person may be accommodated within a broad use of that term without being the accommodated party in the legal sense. The accommodated party has been defined as the one to whom the credit is loaned."

In the case of Mosser v. Criswell, 150 Pa. St. 409, the Supreme Court of Pennsylvania thus comments upon a transaction in which this question was involved:

"A new note made by defendant was in a certain popular sense an accommodation, that is a convenience, to the plaintiff, just as it is a convenience to a creditor who wants his money but cannot get it from his debtor in cash, to get payment by a note on which he can raise the money temporarily, though at the risk of an indorsement which he may ultimately have to pay. But this is very far from what the law means by accommodation paper."

These definitions are in accord with the general trend of authority and show that the courts assign a technical meaning to the word "accommodation" The "party accommodated" is inseparable from accommodation paper, and implies an accommodation party.

The evidence offered by the plaintiff shows that the defendant was not in that sense an accommodated party; he was not one for whom anybody gratuitously executed the note. He was accommodated in the sense that he was benefitted by the transaction, but he was not accommodated in the sense that there was a lending of credit to him. He was an ordinary indorser and therefore entitled to notice of dishonor before he could be held, and no notice was given.

The judgment of the circuit court is reversed.

*Roy, C.,* absent.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.