# CHARLESTON.

J. EVERETT MARTIN *v.* J. TRACY WALKER.

Submitted May 1, 1923.     Decided May 8, 1923.

1. BILLS AND NOTES—*Notice of Dishonor of Negotiable Note May be Waived by an Accommodation Indorser Prior to Time Fixed for Giving it.*

Under sec. 109 of chap. 98A, Code, notice of dishonor of a negotiable note may be waived by an accommodation endorser before the time for giving the notice has arrived, and the waiver may be express or implied. (p. 740).

2. SAME—*Indorser Waives Notice of Dishonor, if he Presents Renewal Note on Day Existing Note is Due, and it is not Accepted.*

Generally, if an endorser on a negotiable note endorses another note in renewal, and presents the same to the holder at the place of payment on the day the existing note is due, for the purpose of taking up the existing note, he thereby waives notice of dishonor if the renewal note be not accepted, and cannot set up lack of notice as a defense to an action on his contract of endorsement. His conduct constitues a waiver of notice. (p. 741).

3.  SAME—*Evidence that Defendant in Action by an Accommoda-
    tion Endorser Waived Demand and Notice of Dishonor Ad-
    missible.*

    An accommodation endorser on a negotiable instrument who
    has paid off and discharged the same after maturity may re-
    cover from a prior endorser the amount paid by him in an
    action of assumpsit; and evidence that defendant waived de-
    mand and notice of dishonor of the instrument at its due date
    is permissible therein under the common count for money
    paid, laid out and expended for his use and benefit and at his
    request.  (p. 742).

Error to Circuit Court, Mercer County.

Action by J. Everett Martin against J. Tracy Walker.
Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Russell S. Ritz,* for plaintiff in error.
*John R. Dillard,* for defendant in error.

LIVELY, JUDGE:

J. Tracy Walker, defendant below, prosecutes this writ to
a judgment of $3642.71 rendered December 6, 1922, by the
circuit court against him on a verdict based on evidence to
which he had demurred.

The declaration is in assumpsit, and contains two counts,
the first of which embraces the common counts.  The second
count avers that the Bluefield Truck Company, on December
20, 1920, executed the note sued on to the First National Bank
of Bluefield as payee, for the sum of $5575.97 at four months;
that defendant Walker then endorsed the note, and after-
wards plaintiff endorsed the same as second endorser, relying
upon the endorsement of defendant; that the note was then
delivered to the bank with the knowledge of defendant, and
when it became due on April 20, 1921, defendant was notified
of the presentation of said note and the non-payment of the
same; that afterwards plaintiff paid the note, and defendant,
as prior endorser, is liable to him therefor.  Defendant plead
non-assumpsit.

The note sued on, and correctly described in the second
count, bears the endorsement on the back of "J. Tracy
Walker" followed by the name of plaintiff.  Plaintiff says

he was an accommodation endorser and endorsed the note on the strength of the prior endorsement and relied upon the financial ability of Walker to protect him. Notes of A. A. Wysor were pledged as collateral by the maker of the note, but plaintiff had doubt of the ability of Wysor to pay, a doubt justified by after events. The note became due April 20, 1921, and was not paid, nor was it protested for non-payment. Plaintiff paid the bank on August 29, 1921, and took up the note. The Wysor notes, pledged as collateral, after long delay in the process of collection, netted $2338.05, which was received by plaintiff and credited on the note as collected. The judgment is for the remainder of the note with interest. The defense is based entirely upon the failure of the bank to protest the note on its due date, and to notify defendant of its dishonor. He says that he is an accommodation endorser and has been relieved from all liability on the note because of failure to dishonor it and give him notice so he could promptly protect his interest. Plaintiff admits there was no payment of the note, and that there was no notice; but says that notice of dishonor was waived by defendant at the time the note became due. It is on this question of waiver upon which the case turns. At the conclusion of the evidence, defendant demurred thereto, in which demurrer plaintiff joined, and the jury returned a verdict for the amount of the note then unpaid, subject to the decision of the court upon the law. The court found the law in favor of the plaintiff, and judgment was entered accordingly. The controlling question is whether the evidence is sufficient to sustain a conclusion of waiver of notice of dishonor by defendant. Witness Pollock, the vice-president of the bank, says that when the note became due his recollection is that Walker, the defendant, brought to the bank a renewal note which he, Walker, had endorsed on the back as "second endorser," and tendered it to the bank as a renewal of the note now sued on. The renewal note did not at that time have the endorsement of plaintiff, and Walker was advised that the renewal would not be accepted in that form. However, Walker left the note at the bank, and Martin was afterwards communicated with, about his endorsement, by the bank officials. He did not endorse the renewal, as he did not wish to continue his liability in that

changed form. Pollock says that he afterwards advised defendant of the fact that his renewal note had not been accepted and that Martin had refused to endorse. Walker's evidence is to the effect that he knew that the note was due on that day and knew that it would not be paid. He says that Jos. M. Bailey, who was doing business as the Bluefield Truck Company, the maker of the note, and who occupied the same offices as himself a part of the time, brought the renewal note to him and he signed it as endorser, making a memorandum on the back thereof that he was second endorser. He says that Bailey took the renewal note to the bank and left it there and he presumed that the note had been renewed and never heard afterwards that the renewal had not been accepted and thought that when the suit was instituted, it was on the renewal note. He denies that he took the renewal note to the bank, and of course denies that he received information from Pollock, the vice-president, or any one else, that the renewal note had not been accepted. In explanation of why he signed the renewal note as "second endorser," he says that such was the understanding when he signed the first note—that is, that he was to be second endorser on the first note. By what means he ascertained that he was not "second endorser" on the first note does not appear. Upon the demurrer to the evidence defendant's statement or any part thereof which is in conflict with that of plaintiff cannot be considered. The court evidently took the view, and properly we think, that credence should be given to the statement of the vice-president that defendant brought the renewal note to the bank on the due date of the original note with his endorsement thereon "second endorser" and tendered the same in renewal of the original obligation; that he was informed by the vice-president that it would not be received in that condition unless agreeable to plaintiff, Dr. Martin; and that after Martin had refused to endorse the renewal note in that form he advised defendant of that fact and that his attempt at renewal had become abortive. The court was at liberty to consider all the reasonable inferences which could be drawn from the plaintiff's testimony which might be inferred therefrom by a jury. It is significant that Jos. M. Bailey's evidence was not taken. He could have cleared up

this apparent discrepancy between the testimony of Pollock and Walker. Do these facts constitute a waiver of notice of dishonor on the part of Walker? The liability of an endorser on negotiable paper depends upon the implied condition that payment shall be demanded of the maker at maturity, and in the event of default, notice of non-payment shall be immediately given to the endorser in order that he may immediately take steps to provide for his indemnity. These implied conditions are for the benefit of the endorser. Prior to maturity the endorser may waive the condition of demand and notice of non-payment, and the waiver may be verbal or in writing; and it is not necessary that it shall be positive and direct; it may result from implication or any understanding between the parties which is of a character to satisfy the mind that a waiver is intended. 1 *Parsons Notes and Bills* 594. It is not necessary that the endorser should say in direct language: "I will waive the presentment of the note and notice of its non-payment"; any statement or action on his part which indicates conclusively that he knows the date of payment and that it will not be paid, and that he intends to continue as security, is sufficient to import an implied waiver. What is the use of presentment and protest for non-payment if the parties know that the note will not be honored? The uniform negotiable instrument act, which is now contained in chapter 98A of our Code, and which is the result of the evolution of mercantile law, in section 109 expressly provides: "Notice of dishonor may be waived either before the time of giving notice has arrived, or after the omission to give notice, and the waiver may be express or implied." It is a general rule that if the endorser, prior to the maturity of the note or at the date of its maturity, consents to or requests an extension of the time of payment, or indorses another note in renewal and for the purpose of extinguishing the existing note, he thereby waives the notice of dishonor and he cannot successfully set up the want of notice as a defense to an action against him on his endorsement. *Leffingwell* v. *White* (1 Johnson's Cases 99), 1 Am. Dec. 97, and note; *Gove* v. *Vining,* 48 Mass. (7 Met.) 212; *Jenkins* v. *White,* 147 Pa. St. Rep. 303; *Amoskeag Bank* v. *Moore,* 37 N. H. 539; *Iowa City Bank* v. *Ryerson,* 23 Ia. 508;

*Bank* v. *Weston,* 49 N. Y. S. 542. In *Jenkins* v. *White* it appeared that defendant, an endorser on a promissory note, some days prior to the maturity of the note, sent to the bank another note intended as a renewal, with the same maker and endorsers. The renewal was not accepted by the bank for the reason that the discount was not paid. The court said: "This we regard as a waiver of protest. It shows that the endorsers did not expect the original note to be paid at maturity, and they could not have been injured by the failure to give notice of its non-payment." The defense was that proper notice of dishonor of the note had not been sent to the endorsers. In *Gove* v. *Vining* the holder of the note, on the day it was due, sent a messenger with the note and a written notice to the endorser requesting payment, to the house in which the maker and endorser resided. The maker was absent, but the endorser read the notice and told the messenger that the maker would see the holder in a short time, and wished him not to sue on the note until the maker should see him. No demand was afterwards made on the maker nor notice given to the endorser. The court held that the endorser had waived a legal demand and notice and was answerable to the holder. Many cases of like import could be cited. In this case defendant was fully apprised of the situation before and at the time the note fell due and that the maker could not pay it. By taking a renewal note to the bank and leaving it there for that purpose on the due date he knew that the note would not be paid; and was told that the note would not be accepted in that form. A formal demand and notice under such circumstances could answer no valuable purpose. The defendant was fully aware of his situation at the time the note fell due. He was apprised by the vice-president of the bank that Martin refused to endorse the renewal note with defendant's name appearing thereon as second endorser. This notification defendant denies, but, as above suggested, his denial is of no value to him under his demurrer to the evidence. Had there been no renewal or attempt at renewal on the part of defendant, can it be questioned that the note would not have been protested and due notice sent to the maker and endorser? No doubt it was his action in the premises which caused the bank to refrain from

protesting the note. It is true that if Martin had requested the bank to protest the note it would have been done. Martin did not request the bank to protest; he knew that the note was due and would not be paid; and what useful purpose could the protest serve when the other endorser was as fully aware of these facts as he was himself? It is argued by counsel for defendant that the tender of the renewal by defendant did not amount to a waiver on his part of the right to be notified of the presentment and dishonor for non-payment of the original note "because the proposed renewal note, if accepted, would have made an entirely different contract and the defendant's liability thereon would have been entirely different from that on the original note, or the note sued on." We fail to appreciate the force of this argument. It is argued that defendant was seeking to make a new contract and change his liability as an endorser, agreeing to remain as endorser if he was made secondary to Martin instead of being first endorser as on the original note and that thereby he did not indicate a willingness to continue his liability as upon the original note. But this does not negative the fact that he knew the note was due, that it would not be paid, and that his attempted renewal upon a different basis was abortive. With such knowledge in his possession, what useful purpose could there have been of going through the formality of giving him notice of what he already knew? "The notice may be in writing or merely oral, and may be given in any terms which sufficiently identify the instrument and indicate that it has been dishonored by non-acceptance or non-payment; it may in all cases be given by delivering it personally or through the mail." Sec. 96, chap. 98A, Code. There is authority to sustain the view that a mere offer of renewal on the part of the endorser, although refused, amounts to a waiver, on the ground that the act of the endorser implies knowledge that the note will not be paid at maturity. *National Hudson River Bank* v. *Reynolds,* 57 Hun. 307. In our case of *Thompson* v. *Curry,* 79 W. Va. 771, the note was not protested for non-payment at the time it became due nor were the defendants, Johnson and Curry, notified of its dishonor. The makers of the note had lost their property by fire prior to the time it became due, and conversations occurred

between the holder of the note and the endorsers about the ability of the makers to pay the note when it fell due, and it seemed that they all were aware that the makers would not pay; after the note had become due, further conversations were had between the holder and the endorsers in which the endorsers did not deny liability but seemed anxious to have the matter settled and directed the holder to institute suit, promising that whatever sum could not be collected from the makers of the note, they would pay.  There was denial on the part of the endorsers as to the conclusions to be drawn from these conversations; and that after suit was brought the endorsers advised the holder that they had found a "hole to get out of payment" because they had not been formally notified of presentment and dishonor.  The opinion held that these facts occurring both before and after the note was due, constituted a waiver of dishonor and notice.  A much stronger case of implied waiver is presented by the facts in the present case; and we think the court was clearly right in determining that there had been a waiver on the part of defendant.

Defendant also contends that his demurrer to the evidence should have been decided in his favor because the second count of the declaration avers "that on the 20th of April, 1921, the date upon which said note became due and payable, the said defendant was notified of the presentation of said note and the non-payment of the same"; that he came into court prepared to meet this allegation in the second count and that plaintiff failed to show that defendant had been notified of the presentation of the note and its non-payment; that if plaintiff relied upon a waiver it should have been pleaded; and therefore, the evidence of waiver was inadmissible and improper as constituting a variance between the pleading and the proof.  To support this contention we are cited to *Hastings v. Gump*, 89 W. Va. 111, wherein it is said that "to render an endorser liable on a negotiable note, it must be presented at the particular time and place specified therein and timely notice of its dishonor given the endorser, unless it is alleged and proven that he in some way waived such notice."  The evidence of waiver offered by plaintiff was not objected to by defendant at the time it was offered; indeed, an objection would have been unavailing because

such evidence was properly admissible under the first count which contains the common counts. If there was a waiver of the notice of presentment and dishonor on the part of defendant, he became liable to the bank for payment of the note; and plaintiff by relieving him of this liability by paying the note himself, was entitled to maintain his action of assumpsit against defendant "for money paid and expended for the use of defendant and at his request." *Teter* v. *Teter*, 65 W. Va. 167; *Bartlett* v. *Bank*, 77 W. Va. 329.

The judgment is

*Affirmed.*