C. E. Lawhead, *Receiver v.* Charles F. Lucas

(No. 7450)

Submitted February 16, 1933.   Decided March 28, 1933.

*Steptoe & Johnson, James M. Guiher,* and *W. Ervin Miller,* for plaintiff in error.

*Robinson & Robinson* and *John S. Stump, Jr.,* for defendant in error.

KENNA, JUDGE:

Charles E. Lawhead, Receiver of Clarksburg Trust Company, brought this action of assumpsit against C. F. Lucas, as indorser of the note of Derbrah Silk Company, the Silk Company being the maker, and M. S. Bredbenner, J. F. Cole, C. A. Cole, C. F. Lucas and S. A. Burnett, the indorsers, upon a note dated January 15, 1929, in the amount of $3,000.00. They had made the note payable to ''ourselves'' and it had been discounted and had come ultimately into the hands of the Clarksburg Trust Company in the manner detailed hereinafter. The sole question presented by the record is whether the indorsers were entitled to the steps of diligence, or, on the other hand, whether (a) they were accommodated indorsers who did not expect the principal to pay, or (b) the circumstances pleaded were such as to constitute a waiver of the steps of diligence on the part of the payee and holder of the note.

Charles F. Lucas was the only party to the note who was sued, and after all of the plaintiff's testimony was in, the court below, on motion of the defendant, directed a verdict for the defendant and that plaintiff *nil capiat.*

The first question presented arises under chapter 98-A, section 80, Code 1923, which reads as follows: ''Presentment for payment is not required in order to charge an indorser where the instrument was made or accepted for his accommodation, and he has no reason to expect that the instrument will be paid if presented. Chronology of events plays a highly important part in reaching the conclusion necessary, under the

complicated circumstances of this case. The following accurately sets down the circumstances in order of time:

*May* 13, 1921. Derbrah Silk Company incorporated under the laws of the State of Pennsylvania. *July*, 1923. Affairs of the Silk Company liquidated under the laws of the State of Pennsylvania. *August* 15, 1924. Derbrah Silk Company made its note for $14,000.00, indorsed by Lucas, Cole and three other directors of the Silk Company. *September* 10, 1924. The $14,000.00 note was discounted and the proceeds placed to the credit of the Silk Company in the First National Bank of Shinnston. *December*, 1924. The account of the Silk Company with the First National Bank of Shinnston closed out. *December*, 1925. First National Bank of Shinnston carrying the $14,000.00 Silk Company note with the original indorsers. *December* 8, 1925. Note for $3,000.00 signed by Silk Company and indorsed by Lucas, Cole and three other directors of the Silk Company. *December* 12, 1925. Date of note in renewal in full of the $14,000.00 note of the Silk Company with the indorsements of the five directors. *December* 18, 1925. Credit item received by the First National Bank of Shinnston from the Bank of Wyatt in the amount of $2955.00 entered upon the Bank of Shinnston's books, preceded by the word "Derbrah". *December* 18, 1925. Deposit tickets crediting Lucas and Cole each with $1,000.00 in the First National Bank of Shinnston without further explanation. The ledger account of Lucas shows this credit. Cole's ledger account not located. *December* 18, 1925. Credit item of $1,000.00 on the books of the First National Bank of Shinnston preceded by the word "Derbrah". *December* 21, 1925. $3,000.00 note of the Silk Company with the indorsements of Lucas and Cole discounted at the Bank of Wyatt. *December* 28, 1925. Entry. on the books of the First National Bank of Shinnston showing the discount (by way of renewal) of the note of the Silk Company in the amount of $14,000.00, indorsed by Lucas, Cole and three other directors of the Silk Company. *January* 6, 1926. Board of directors of Bank of Wyatt approved the discount of the $3,000.00 note of the Silk Company with the indorsements stated. *March* ....., 1926. "Out of existence affidavit" filed for Silk Company in Pennsylvania. *July* 5, 1927. The $14,000.00 note of Silk Company, with the indorsements, re-

duced to a note of $11,000.00 with the same indorsements, as shown by the books of the First National Bank of Shinnston. *January* 25, 1929. Note sued on made by Silk Company with the indorsements of Lucas, Cole and the three other directors of Silk Company, in renewal of the $3,000.00 note originally made and carried in the Bank of Wyatt up to this time. *March* 11, 1929. The renewal note dated January 25, 1929, transferred by the Bank of Wyatt to the Clarksburg Trust Company. *April* 26, 1929. Bank of Wyatt closed. *May* 6, 1929. Collection slip made out by the Clarksburg Trust Company for the purpose of sending the $3,000.00 note to the First National Bank of Shinnston, where it was payable, for collection. This collection slip contains specific directions that the note should be protested upon dishonor. *May* 22, 1929. First National Bank of Shinnston closed. *June* 7, 1929. Clarksburg Trust Company closed.

The items of December 18, 1925, above detailed, appear upon the general ledger but not upon the journal of the First National Bank of Shinnston.

The witness Swann, in accounting for the item of $2955.00 under the date of December 18, 1929, credit in the First National Bank of Shinnston to the Bank of Wyatt, says that it represented the note of Bonasso Brothers, received in the First National Bank of Shinnston.

Upon the proof showing the foregoing facts, the learned trial judge took the case from the jury and instructed for the defendant. In the course of an extended and able opinion, the trial judge set forth clearly his reasons for the directed verdict, and made it clear that he considered that there was no proof from which a reasonable inference could be drawn that Lucas had been benefited from the original discount of the $3,000.00 note. The trial court said, among other things: "What the court desires to stress here is that it is not sufficient that the indorser know at the time he executed the note that the maker is bankrupt or that he is out of business, to relieve of presentment or to relieve of notice of presentment and dishonor; but that with that knowledge, there must also flow to him some value for the note." Again: "He (counsel for plaintiff) urges that the defendant, Lucas, knew that this Silk Company was a defunct organization at the time of the execu-

tion of this note and the original note, and that the circumstances in the case show that the note was executed for his accommodation. But no witness so declares; even an interpretation of the books does not go that far. The fact that $1,000.00 was credited to the account of Lucas on December 18, 1929, is a mere coincidence, so far as this record is concerned.''

We cannot agree with this conclusion of the trial court. From the evidence, it appears that Lucas was one of the directors of both the Bank of Wyatt and the First National Bank of Shinnston. These two banks were the ones that dealt with the $3,000.00 note in question. Lucas was also a director in Derbrah Silk Company. He had been one of the incorporators, was active in its management and, it is a fair inference from all of the circumstances of the case, could control or influence the use of its corporate name. The note in question came into being December 8, 1925. Its formal discount at the Bank of Wyatt was on December 21, 1925. There is proof, however, that on December 18, 1925, an item in corresponding amount came through from the Bank of Wyatt to the First National Bank of Shinnston and was credited with the designation ''Derbrah''. On the same day (December 18, 1925), deposit slips in the sum of $1,000.00 each appear to have been properly credited in the name of Lucas and Cole. Also an item of $1,000.00 credited on the books, preceded by the word ''Derbrah''. There is no item showing that the Derbrah Silk Company received any advantage from the discount of the $3,000.00 note upon which its name appeared as maker until July 5, 1927, when the amount of $3,000.00 was credited upon its pre-existing note in the sum of $14,000.00 at the First National Bank of Shinnston. So that it would appear that the circumstance of the deposit tickets for $1,000.00 credited to Lucas and Cole on December 18, 1925, is not, as the learned trial judge has stated, a mere coincidence. It seems to us, on the other hand, that that fact, coupled with the fact that no advantage to the Derbrah Silk Company appears at the time the note was discounted and during 19 months thereafter, furnishes material for a strong inference that instead of merely lending his name and credit, as in the case of an accommodation indorser, Lucas did in fact receive some direct benefit to himself from the negotia-

tion of the $3,000.00 note in the Bank of Wyatt. We are conscious of the confusion that exists, due to the testimony of Swann, receiver, to the effect that the item of $2955.00 remitted by the Bank of Wyatt to the First National Bank of Shinnston at this time was proceeds of the note of Bonasso Brothers. And yet, the fact that there was an item of $3,000.00 received by the First National Bank of Shinnston and credited upon its books with the notation "Derbrah", makes this confusion a typical one for jury determination. When the item came through it did not go to the credit of the Silk Company. This occurred some eighteen months afterward. In the meantime, the books of the First National Bank of Shinnston tend to show that Lucas derived benefit from the discounting of the $3,000.00 note in the Bank of Wyatt In addition to this evidence, which we believe furnishes material for at least a reasonable inference that Lucas was benefited by that transaction, there is abundant proof to go to the jury on the question that Lucas did not expect the maker of the note to pay it at maturity. We therefore decide that the learned trial judge was wrong in not submitting to the jury, under proper instructions, the question of whether Lucas was entitled to the steps of diligence. There is too much tendency to conflict in the proof for the court to have decided this question of fact.

On the question of waiver, we can see no prejudice to the defendant in the method of allegation. True, it is not expressly stated that the facts pleaded, in their legal effect, constitute a waiver of the steps of diligence. But there is no doubt that the defendant was fully apprised of what he would be expected to meet. The allegations of the declaration are specific and definite. They could therefore be proved at the trial. Having proved them, the plaintiff can rely upon them in any manner, except such as would result in departure, unfairness or surprise, that he desires under proper instructions from the court. We therefore think that this matter too should have been submitted to the jury.

For the reasons stated, we are of opinion to reverse the judgment, set aside the verdict, and remand the case for a new trial.

*Reversed and remanded.*