E. A. RINEHART, *Receiver, etc. v.* CHARLES F. LUCAS

(No. 8381)

Submitted March 2, 1937. Decided March 30, 1937.

*Steptoe & Johnson* and *James M. Guiher,* for plaintiff in error.

*Robinson & Stump,* for defendant in error.

RILEY, JUDGE:

This is an action in assumpsit against Charles F. Lucas, who was an indorser, together with M. F. Dredbenner, J. M. Cole, Clyde A. Cole and F. A. Burnett, on a certain promissory note in the principal amount of $1,400.00, dated March 10, 1929, made by Derbrah Silk Company. The plaintiff, E. A. Rinehart, Receiver of Merchants & Mechanics Savings Bank of Grafton, West Virginia, a corporation, prosecutes error to a judgment entered on a directed verdict in favor of the defendant.

The note declared on was the final renewal (there having been several renewals) of an original note, dated July 15, 1922, negotiated at the Merchants & Mechanics Bank of Grafton through the First National Bank of Shinnston. On March 18, 1929, the final renewal note was discounted at the Merchants & Mechanics Bank through said First National Bank of Shinnston.

On May 13, 1921, the Derbrah Silk Company was incorporated in Pennsylvania for the purpose of operating a silk manufacturing plant at Point Allegany, in that state. The defendant Lucas was an incorporator, stockholder and active director of the company, and also, according to some testimony, its vice-president. All of the indorsers of this note, including the defendant, were directors of the company. In 1921 or 1922, for a period of sixty or ninety days, the company operated at Point Allegany. In July, 1923, the plant and equipment of the company were taken over by its creditors, and since that time, the company has had no assets or property in Pennsylvania. On December 31, 1924, the company's account at the First National Bank of Shinnston was closed out completely. On March 9, 1926, an "out of existence" affidavit was filed with the Pennsylvania department of revenue by the Derbrah Silk Company by William J. Hartman, its president, which affidavit reads in part as follows:

> "I was President of the Derbrah Silk Company, a corporation chartered under the laws of the State of Pennsylvania, and have knowledge of its affairs. Said Company ceased to transact business on or about July 1st to 8th, 1923, and the assets were distributed, viz: Real estate sold and funds distributed to Business Mens' Association of Pt. Allegany—W. J. Barhoo, Trustee—Personal property sold and proceeds went to cover debts—I. B. Bernstein, Pt. Allegany, Trustee. Since that time it has owned no property, and the purpose for which the Company was chartered has been permanently abandoned. It is requested that the Company be marked 'Out of Existence' on the records of the Auditor General's Department of Pennsylvania."

The indorser, Clyde A. Cole, was the cashier of the First National Bank of Shinnston. Lucas had been a director of said bank and member of its discount committee. Lucas and his co-indorser, Clyde A. Cole, as directors of the silk company, were active in the company's financial affairs.

After the company ceased to do business, Hartman, Clyde A. Cole and Lucas, as incorporators, organized the Austin Silk Company under the laws of Pennsylvania. This company had its plant located at Austin, Pennsylvania, eighteen miles from Point Allegany. It used the equipment and machinery which the Derbrah Silk Company formerly had owned, having acquired the same from the Scranton Silk Company, a creditor, which had repossessed it. The new company, according to Hartman's testimony, was organized to reimburse Cole and Lucas for money they had expended while interested in Derbrah Silk Company. In 1929, when the note involved in the instant case was executed and negotiated, the Derbrah Silk Company had no business, and the evidence tended to show that it was without assets or property. It had $18,-400.00 of obligations as follows: (1) the note in the amount of $1,400.00, involved in this action; (2) a note for $3,000.00, dated June 9, 1929, which note was paid by Lucas upon maturity after presentment, dishonor and notice of dishonor; (3) a note for $3,000.00 held by the Clarksburg Trust Company which was involved in the suit of *Lawhead* v. *Lucas*, 113 W. Va. 540, 168 S. E. 803; and (4) a note for $11,000.00 held by the First National Bank of Shinnston, West Virginia, which was involved in the case of *Lucas* v. *Swan*, 67 F. (2d) 106, 90 A. L. R. 210. Each of the foregoing notes was made and signed by Derbrah Silk Company as maker, and indorsed by the said Lucas, M. F. Dredbenner, J. F. Cole, Clyde A. Cole and F. A. Burnett, all of whom were directors of said Derbrah Silk Company. The evidence shows that Merchants & Mechanics Bank of Grafton, the owner of the note involved in the instant case, had no knowledge of the affairs of Derbrah Silk Company.

Late in 1928, Lucas made a trip to Point Allegany

with Clyde A. Cole for the purpose of ascertaining the affairs of the Derbrah Silk Company. On this trip, so he testified, he learned that the plant and equipment of the Derbrah Silk Company had been taken back by its creditors.

For defense, Lucas relies upon the fact that the note in question was not presented for, payment and dishonored, and the notice of presentment and dishonor given to him. On the other hand, the plaintiff says that (1) under the circumstances under which the note was renewed, the defendant Lucas impliedly waived notice of presentment and dishonor; and (2) the defendant Lucas was an accommodated indorser.

Ordinarily, an accommodation indorser of a negotiable promissory note is relieved of liability unless at maturity the note is presented for payment and dishonored, and notice of dishonor is given to the indorser. Code, 46-6-1; Code 46-7-1; *Thompson* v. *Curry*, 79 W. Va. 771, 91 S. E. 801; *Grandison* v. *Robertson*, 231 F. 785; *Phipps et al.* v. *Harding*, 70 F. 468, 30 L. R. A. 513; *Kelly* v. *Ford*, 115 W. Va. 435, 176 S. E. 705; *Lucas* v. *Swan*, *supra*. However, under the negotiable instruments law, presentment (Code, 46-6-13) and notice of dishonor (Code, 46-7-21) may be impliedly waived. Generally, any statement or action on the indorser's part which indicates conclusively that he knows the date of payment and that it will not be paid, and that he intends to continue as security, is sufficient to import an implied waiver. 1 Parsons, Notes and Bills, 594; *Martin* v. *Walker*, 93 W. Va. 736, 117 S. E. 879, 36 A. L. R. 562; *Linthicum* v. *Bagby*, 131 Md. 644, 102 A. 997; *Simonoff* v. *Granite City National Bank*, 279 Ill. 248, 116 N. E. 636. In *Lucas* v. *Swan*, *supra*, cited by defendant's counsel, the court held that, where the evidence was in conflict on the question of whether the indorser asked and was given time to arrange for payment, a jury question was presented. There the plaintiff sought to recover on one of the Derbrah Silk Company's notes in the amount of $11,000.00. True, in the instant case, there is no evidence of any request of defendant for an

extension of time. However, other elements enter into this case which were not shown by the record in the *Lucas* case, where the court was dealing merely with an insolvent corporation. The court there held that the "out of existence" affidavit was not admissible to prove insolvency. However, in the instant case, the filing of the "out of existence" affidavit is a part of the evidence showing the participation of Lucas in denuding the Derbrah Silk Company of its assets and therefore disabling it from performing its obligations under the note. Here, the evidence tends strongly to show that all of the assets and equipment of the Derbrah Silk Company were taken from it by the Scranton Silk Company through dispossession and transferred to the Austin Silk Company of which Lucas was an incorporator. In view of Lucas' testimony to the effect that he did not intend to waive presentment and notice of dishonor, we cannot, as a matter of law, say that this case is one of implied waiver.

According to the great weight of American authority, the insolvency of the Derbrah Silk Company did not dispense with presentment and notice of dishonor. *Haynes Automobile Co.* v. *Shepherd et al.,* 220 Mich. 231, 189 N. W. 841, 25 A. L. R. 960, 963 (n) ; *Watkins* v. *Crouch & Co.,* 5 Leigh (32 Va.) 522; *Roper* v. *Gould,* 22 Cal. App. 114, 133 P. 622; *Kimmel* v. *Weil,* 95 Ill. App. 15; *May* v. *Coffin,* 4 Mass. 341; *Granite Bank* v. *Ayers,* 16 Pick. (Mass.) 392, 28 Am. Dec. 253. The fact that Lucas knew of the silk company's insolvency does not alter the application of the general rule. 3 Ruling Case Law, 1234, section 459; *Haynes Automobile Co.* v. *Shepherd et al., supra; Kimmel* v. *Weil, supra; Case* v. *McKinnis,* 107 Ore. 223, 213 P. 422, 32 A. L. R. 167; *Marshall* v. *Sonneman,* 216 Pa. 65, 64 A. 874. And the fact that Lucas was a director of the Derbrah Silk Company, coupled with his knowledge of the company's insolvency, did not of itself constitute a waiver of notice under the negotiable instruments law. *Haynes Automobile Co.* v. *Shepherd et al., supra; Case* v. *McKinnis, supra.* Where, however, an indorser's conduct renders it impossible for the maker

to pay the note, an implied waiver of presentment and notice of dishonor occurs. *O'Bannon Co.* v. *Curran,* 129 App. Div. 90, 113 N. Y. S. 359; *Manufacturers' Trust Co.* v. *Wechsler,* 7 N. J. Misc. 886, 147 A. 459; *Atlantic Refining Co.* v. *Nucar Forwarding Corporation et al.,* 11 N. J. Misc. 541, 167 A. 677. In the last mentioned case, the court held that a corporation's president and secretary indorsing the corporation's notes was held to have impliedly waived presentment of the notes and notices of dishonor by participating in a bankruptcy proceeding of the corporation, and having knowledge of the corporation's inability to pay. In the *O'Bannon* case, the president of a company who indorsed a company's note was held to have impliedly waived presentment and notice of dishonor when he knew of the company's inability to pay because its property was in the hands of a receiver in bankruptcy, in which he had participated.

In the instant case, the evidence tends to show that the corporation had been denuded of all of its assets; that Lucas' co-indorsers were unable to pay their part of the obligation, and that the silk company had ceased to do business in the State of Pennsylvania, the state of its incorporation. True, the filing of the "out of existence" affidavit did not destroy the entity of the Derbrah Silk Company. It did not dissolve the corporation, and said corporation could continue to act and carry on its business. The filing of the "out of existence" affidavit and the insolvency of the Derbrah Silk Company did not of themselves constitute an implied waiver of notice. *Lucas* v. *Swan, supra.* These facts, however, are important in the light of the steps which Lucas, together with Hartman and Cole, took in denuding the Derbrah Silk Company of its assets thereby disabling it from doing business.

As heretofore noted, the court, in the *Lucas* case, suggested inadmissibility of the "out of existence" affidavit for the purpose of showing the insolvency of the Derbrah Silk Company. For this purpose, the affidavit is inadmissible. It is an *ex parte* instrument and its contents cannot be proven by it. However, it is admissible for the

purpose of showing the efforts on the part of the officers and directors, including Lucas, of the silk company to denude the company of its assets and to translate those assets to the Austin Silk Company for the purpose, as Hartman testified, of benefiting Cole and Lucas. The execution and filing of this affidavit do not as a matter of law constitute an implied waiver. The affidavit is a single element which is to be considered by the jury on the question of implied waiver of presentment and notice of dishonor, and for this purpose alone, it is admissible.

As to Lucas' participation in this matter, the evidence is not full and therefore is not conclusive as a matter of law. However, the organization of the new company and translation of the assets of the Derbrah Silk Company to the Austin Silk Company for the purpose, so Hartman testified, of enabling Lucas and Cole to be reimbursed for the money expended clearly constituted such a state of facts that a jury would be entitled to infer that Lucas impliedly waived notice of presentment and notice of dishonor. The situation is not altered by the fact that Lucas testified that he did not intend to waive presentment and notice of dishonor. This testimony, together with all the testimony of the case, simply presents a conflict of evidence on the question of implied waiver of notice, and clearly presents a question which should have been solved by the jury. We think the circuit court erred in not presenting this question to the jury.

But plaintiff claims Lucas was an accommodated indorser in an excuse of the failure to present the note for payment and give notice of dishonor. On this question, reliance is had on the cases of *Lawhead* v. *Lucas,* 113 W. Va. 540, 168 S. E. 803; and *Dankmer* v. *Wheeling Printing Company,* 103 W. Va. 40, 136 S. E. 690. Both of these cases are distinguishable from the instant case. In *Lawhead* v. *Lucas,* the defendant actually received a part of the proceeds derived from the note. In the *Dankmer* case, the note was given by the indorser in order to ward off criminal prosecution. For this purpose, the Wheeling Printing Company as accommodation maker made the note lending its credit to the indorser Dankmer. In

solving the question in the instant case as to whether Lucas was an accommodated indorser, we must not overlook the express provision of the statute. Section 29 of the negotiable instruments law (chap. 98 A, 1923 Code) defines an accommodation party as one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor and for the purpose of lending his name to some other person. The indorsers of the note in *Lawhead* v. *Lucas,* and the *Dankmer* case received value for their indorsement. True, in the *Dankmer* case, the value was not pecuniary. This, however, is not indispensable. In the instant case, however, the record clearly shows that no value, pecuniary or otherwise, passed to the indorser Lucas. He was accommodated in the sense that the time for the payment of the obligation under the note was extended. If such a situation alone constitutes an indorser an accommodated party, then in every case in which notes are renewed, the indorser of renewal notes would be an accommodated person. An accommodated party implies, and necessarily so, an accommodation party. *First National Bank* v. *Bach,* 98 Ore. 332, 193 P. 1041; *Overland Auto Co.* v. *Winters,* 277 Mo. 425, 210 S. W. 1. Clearly, in the case at bar, the Derbrah Silk Company was not lending its credit to the indorser Lucas. On the contrary, Lucas was lending his credit to the silk company. True, at the time of the last indorsement the corporate maker was insolvent and without assets; but mere insolvency does not constitute the indorser an accommodated indorser. 25 A. L. R. 962. This company, though depleted in its assets, had not been dissolved and its corporate entity had not been destroyed. *Lucas* v. *Swan, supra.* The facts that the company was insolvent and Lucas, a member of its directorate, had knowledge of the insolvency, do not constitute him an accommodated indorser. In *Case* v. *McKinnis, supra,* the Supreme Court of Oregon said: "The mere fact that the indorser may be indirectly benefited or interested because he is a stockholder does not make him an accommodated party." And in *O'Neal* v. *Clark,* 229 Ala. 127, 155 So. 562, 94 A. L. R. 589, the court said: "The fact

that the indorsers were officers or stockholders of the banking corporation, lending their credit to the bank in forwarding a banking business in which they had an interest, does not render them accommodated indorsers. The question is one of primary liability. If the indorser is not the person receiving value, not the debtor due to pay, but entitled to recourse against the maker, in case he is compelled to pay, he is entitled to notice of dishonor, etc."

Plaintiff's counsel rely upon the cases of *Fosdick* v. *Government Mineral Springs Hotel Co.*, 115 Wash. 127, 196 P. 652, and *Greenwade* v. *First Nat. Bank of Louisa*, 240 Ky. 60, 41 S. W. (2d) 369. The *Fosdick* case was criticized in Brannon's Negotiable Instruments Law (4th Ed.), at page 716. In commenting on these cases, the court, in *Lucas* v. *Swan*, said:

> "In the Fosdick Case, we think that the court has misinterpreted the meaning of 'accepted' as used in the statute; and we cannot follow its reasoning to the effect that a bank which discounts a note for an insolvent maker is to be held to have 'accepted' it for the accommodation of the indorsers. * * * The same may be said of the reasoning in the Greenwade Case, * * *."

Likewise, we do not follow the reasoning of the courts in the *Fosdick* and *Greenwade* cases on the question of whether the indorser is an accommodated indorser. We think Lucas had not received such a benefit from the indorsement of the note in question as would constitute him an accommodated indorser. We are prompted to take this position on this question of accommodated indorser because Lucas does not come within the strict provisions of the statute. Chapter 98 A, sections 29, 80, Code 1923.

We are well aware that a sound public policy dictates that, in the absence of constitutional ground, there should be no judicial interference with the statutory law governing the negotiation of negotiable paper. The negotiable instruments law was enacted for the purpose of facilitating, not hindering or hampering, transactions in com-

mercial paper. It should not be tampered with haphazardly or lightly. Nor should it be brushed aside in order to meet the necessities of a single case. To do so is dangerously apt to disturb commercial transactions generally and would destroy the salutary purposes underlying the law merchant. We therefore agree with the circuit court that Lucas was not an accommodated indorser. On this point, the court did not err.

The judgment of the circuit court is reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*